IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

October 29, 2024 02:38 PM
SCT-Civ-2023-0014
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **GOVERNOR ALBERT BRYAN, JR., in his** ) | **S. Ct. Civ. No. 2023-0014** |
| **official capacity, and GOVERNMENT OF THE** ) | Re: Super. Ct. Civ. No. 361/2021 (STT) |
| **VIRGIN ISLANDS** ) | |
|     Appellants/Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **VIRGIN ISLANDS WATER AND POWER** ) | |
| **AUTHORITY,** ) | |
|     Appellee/Defendant. ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas and St. John
Superior Court Judge: Hon. Renee Gumbs-Carty

Argued: March 12, 2024
Filed: October 29, 2024

Cite as: 2024 VI 30

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN,** Associate Justice.

**APPEARANCES:**

**Ian S. Clement, Esq. (Argued)**
Assistant Attorney General
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
    *Attorney for Appellants,*

**Patricia Quinland, Esq.[1]**
Assistant General Counsel
Virgin Islands Water and Power Authority
St. Thomas, U.S.V.I.
    *Attorney for Appellee,*

**Amos W. Carty, Jr., Esq. (Argued)**
Chief Legal Counsel
Legislature of the Virgin Islands
St. Thomas, U.S.V.I.
    *Attorney for Amicus Curiae.*

# OPINION OF THE COURT

**CABRET, Associate Justice.**

---

[1] This appeal presents a unique situation in which the appellants and the appellee are not adversarial and desire the same outcome. In this Court's February 23, 2024 order, we ordered that the appellee "is deemed to have waived its argument in this matter due to its agreement with the opposing parties' arguments" and noted that "[t]he Appellants are authorized to divide their time with the [Appellee], should they wish to do so." At the March 12, 2024 hearing for oral argument, the appellants did not divide their time with the appellee.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 2 of 62

2024 VI 30

¶ 1     Appellants Governor Albert Bryan, Jr. in his official capacity and the Government of the

Virgin Islands (collectively, hereinafter "Governor Bryan")[2] appeal from the Superior Court of the

Virgin Islands' (hereinafter "Superior Court") March 8, 2023 memorandum opinion finding that

"Act No. 8472 does not violate the separation of powers doctrine and is a valid exercise of

legislative authority" and the accompanying March 8, 2023 order denying Governor Bryan's

request for a permanent injunction and declaratory judgment and lifting the Superior Court's

September 20, 2021 preliminary injunction order enjoining Appellee Virgin Islands Water and

Power Authority (hereinafter "WAPA" or "Authority") from the enforcement and implementation

of Act No. 8472.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 2     In 1964, the Legislature of the Virgin Islands (hereinafter "Legislature") created WAPA as

"a public corporation and autonomous governmental instrumentality" with its own governing

board (hereinafter "Governing Board") for the purpose of "developing and utilizing and aiding in

the development and utilization of adequate water and electric power systems for the people of the

Virgin Islands." V.I. CODE ANN. tit. 30 §§ 103, 105; *see Creque v. Luis*, 803 F.2d 92, 93 (3d Cir.

1986) ("WAPA was created by statute in 1964, 30 V.I.C. § 103, and is an autonomous

governmental instrumentality, charged with supplying power and water to the Virgin Islands.").

---

[2] When the Governor of the Virgin Islands and the Government of the Virgin Islands are parties on the same side of the litigation, we usually refer to them collectively as the "Government." However, that terminology seems inapt in this instant appeal given that the question before us is whether the legislative branch of the Government of the Virgin Islands exercised authority that is allocated by the Revised Organic Act to the executive branch of the Government of the Virgin Islands. To avoid confusion, we therefore refer to the appellants—Governor Albert Bryan, Jr. in his official capacity and the Government of the Virgin Islands—collectively as "Governor Bryan."

[3] The memorandum opinion and the order were dated March 8, 2023 and entered on March 9, 2023.

*Bryan and GVI v. WAPA*                2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 3 of 62

¶ 3      At the time of WAPA's creation, the Governing Board consisted of five members—three

governmental members and two non-governmental members[4]—and required a quorum of three

members to act. *See* Act No. 1248, § 1 (V.I. Reg. Sess. 1964).[5] The Legislature designated the

---

[4] The Legislature oftentimes used the term "governmental member" interchangeably with the term "government member" and the term "non-governmental member" interchangeably with the term "non-government member" in the various Acts it enacted concerning the Governing Board. *See infra*, notes 5, 7, 9, 10, 13. For consistency, we will use the term "governmental member" and "non-governmental member" unless quoting directly from the Acts or elsewhere.

[5] Act No. 1248 provided:

   Section 1. A new chapter 5 is added to Title 30 of the Virgin Islands Code as follows:

   *"Chapter 5. Virgin Islands Water and Power Systems*

   ...

   *Subchapter II. Virgin Islands Water and Power Systems*

   § 103. Creation of Virgin Islands Water and Power Authority

   (a) The Governor of the Virgin Islands, the Commissioner of Public Works for the Virgin Islands and the Commissioner of Commerce for the Virgin Islands and two other persons not employed by the Government of the Virgin Islands, or by the Government of the United States, one a resident of St. Thomas and one [a] resident of St. Croix, to be appointed by the Governor with the advice and consent of the Legislature, are hereby created a body corporate and politic constituting a public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands, by the name of the 'Virgin Islands Water and Power Authority'. In addition, the Director of the Budget shall be a member ex officio of the Authority but shall not be entitled to a vote thereon. In the initial appointment of the two members by the Governor, one shall be appointed for a term of one year and one shall be appointed for a term of two years. After completion of the initial staggered terms of one and two years respectively, the appointed members shall be appointed for terms of two years, except that any person appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed only for the remainder of such term. Each such appointed member shall serve until the appointment and qualification of his successor. Governmental members for the Authority shall be entitled to no compensation for their service as members. Nongovernmental members shall be entitled to compensation at the rate of $20 a day or fraction thereof spent in the work of the Authority. All members shall be entitled to reimbursement for, or per diem in lieu of, necessary travel expenses.

   (b) The Authority hereby created is and shall be a governmental instrumentality subject, as provided for herein, to the control of the aforenamed officers of the Government of the Virgin Islands, acting in their capacity as members and Governing Board thereof, but it is a corporation having legal existence and personality separate and apart from the Government and the officers controlling it. Subject to section 112(a) of this chapter, the debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, facilities, and property of the Authority shall be deemed to be those of said Authority and not to be those of the Government of the Virgin Islands, or any office, bureau, department, agency, commission, municipality, branch, agent, officer or employee thereof.

   § 104. Governing Board and other personnel of Authority

   ...

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 4 of 62

2024 VI 30

Governor of the Virgin Islands (hereinafter "Governor"),[6] the Commissioner of Public Works for the Virgin Islands, the Commissioner of Commerce for the Virgin Islands as the three governmental members. *See id.* The two non-governmental members—comprised of a St. Thomas resident and a St. Croix resident—were appointed by the Governor with the advice and consent of the Legislature. *See id.* After the first appointed members completed their initial staggered terms, the two appointed members were to be appointed to two-year terms. *See id.* Additionally, the Director of the Budget for the Virgin Islands was a member ex officio of WAPA but not entitled to a vote. *See id.* The Legislature specified that WAPA is controlled by "the aforenamed officers of the Government of the Virgin Islands, acting in their capacity as members and Governing Board thereof," and reiterated WAPA's autonomy by stating that WAPA "is a corporation having legal existence and personality separate and apart from the Government and the officers controlling it" and that "the debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, facilities, and property of the Authority shall be deemed to be those of said Authority and not to be those of the Government of the Virgin Islands, or any office, bureau, department, agency, commission, municipality, branch, agent, officer or employee thereof." *See id.*

¶ 4    In 1968, the Legislature reorganized the Governing Board by amending the relevant statute 30 V.I.C. § 103(a) (hereinafter "Section 103(a)"). More specifically, the Legislature passed Act

---

(b) Three members of the Board shall constitute a quorum for the purpose of organizing the Authority and conducting the business thereof and for all other purposes, and all action shall be taken by a vote of the majority.

. . ."

Act No. 1248, § 1 (V.I. Reg. Sess. 1964).

[6] This Court will use the term "Governor" when referring generally to the Governor of the Virgin Islands and the term "Governor Bryan" when referring specifically to the appellants.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 5 of 62

2024 VI 30

No. 2366 and implemented the following changes: (i) increased the total number of the Governing Board members from five to nine by increasing the number of governmental members from three to four and increasing the number of non-governmental members from two to five; (ii) designated the Director of the Budget for the Virgin Islands—the previous member ex officio—as the fourth governmental member; (iii) mandated that the non-governmental members must be comprised of two St. Thomas residents, two St. Croix residents, and one St. John resident; and (iv) increased the term length for the appointed members from two years to three years. *See* Act No. 2366, § 1 (V.I. Reg. Sess. 1968).[7] The Legislature also increased the quorum requirement for the Governing Board from three members to five members by amending the relevant statute 30 V.I.C. § 104(b).[8]

---

[7] Act No. 2366 provided:

Section 1. Chapter 5, Title 30 of the Virgin Islands Code is hereby amended as follows:

…

b. Subsection (a), section 103 of such chapter is hereby amended as follows:

"(a) The Governor of the Virgin Islands and Power Authority, the Commissioner of Public Works for the Virgin Islands, the Commissioner of Commerce for the Virgin Islands, the Director of the Budget and five other persons to be appointed by the Governor with the advice and consent of the Legislature, are hereby created a body corporate and politic constituting a public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands, by the name of the 'Virgin Islands Water and Power Authority'. Of the appointed members, two must be residents of St. Thomas, two must be residents of St. Croix, and one must be a resident of St. John, and none may be an employee of the Government of the Virgin Islands or of the Government of the United States. Appointed members shall be appointed for terms of three years, except that any person appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed only for the remainder of such term. Each appointed member shall serve until the appointment and qualification of his successor. Governmental members for the Authority shall be entitled to no compensation for their service as members. Nongovernmental members shall be entitled to compensation at the rate of $20 a day or fraction thereof spent in the work of the Authority. All members shall be entitled to reimbursement for, or per diem in lieu of, necessary travel expenses."

Act No. 2366, § 1b (V.I. Reg. Sess. 1968).

[8] Act No. 2366 provided:

Section 1. Chapter 5, Title 30 of the Virgin Islands Code is hereby amended as follows:

…

c. Subsection (b), section 104 of such chapter is amended by changing "Three members" appearing therein to read "Five members".

Act No. 2366, § 1c (V.I. Reg. Sess. 1968).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 6 of 62

2024 VI 30

¶ 5    In 1978, the Legislature, again, restructured the Governing Board by amending Section 103(a). More specifically, the Legislature passed Act No. 4108 and implemented the following changes: (i) reduced the number of governmental members from four to three; (ii) mandated that the Governor of the Virgin Islands, the Commissioner of Public Works for the Virgin Islands, the Commissioner of Commerce for the Virgin Islands, and the Director of the Budget to no longer serve as governmental members; (iii) mandated that the Governor appoint the governmental members from among the heads of cabinet-level executive departments or agencies; (iv) increased the number of non-governmental members from five to six; (v) mandated that the non-governmental members must be comprised of three residents of the District of St. Thomas-St. John and three residents of the District of St. Croix; (vi) added that "[n]on-government members may be reappointed with the advice and consent of the Legislature"; (vii) added that "[g]overnment members shall serve during the term of their government position at the pleasure of the Governor"; and (viii) increased the compensation rate for non-governmental members from $20.00 to $30.00 "for each day or fraction thereof spent in the work of the Authority." *See* Act No. 4108, § 1 (V.I. Reg. Sess. 1978).[9] The Legislature also amended the first sentence of 30 V.I.C. § 103(b) to read as

---

[9] Act No. 4108 provided:

Section 1. Title 30, section 103, Virgin Islands Code, is amended in the following instances:

(a) Strike subsection (a) thereof in its entirety and insert in lieu thereof the following:

(a) There is hereby created a body corporate and politic constituting a public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands, by the name of the "Virgin Islands Water and Power Authority", which shall be governed by a board consisting of nine persons, six of whom shall not be employees of the Government of the Virgin Islands or the Government of the United States and who shall be appointed by the Governor with the advice and consent of the Legislature, and three of whom shall be appointed by the Governor from among the heads of cabinet-level executive departments or agencies. Of the non-governmental members, three must be residents of the District of St. Thomas-St. John and three must be residents of the District of St. Croix. Non-governmental members shall be appointed for terms of three years, provided, however, that the first appointments made pursuant to this subsection shall be for a term of one year for one of the members from the District of St. Thomas-St. John, and for one of

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 7 of 62

2024 VI 30

follows: "The Authority hereby created is and shall be a governmental instrumentality subject, as provided for herein, to the control of the Governing Board thereof, but it is a corporation having legal existence and personality separate and apart from the Government." *See id.*

¶ 6    In 1984 and 1990, the Legislature made minor adjustments to the Governing Board by amending Section 103(a) to adopt new protocol and revise existing protocol for the Governing Board members; the Legislature did not make any changes affecting the Governor Board's nine-member-composition consisting of three governmental members plus six non-governmental members. More specifically, the 1984 amendment added that non-governmental members may be removed for cause by the Governor, *see* Act No. 4951, § 1 (V.I. Reg. Sess. 1984),[10] and the 1990 amendment increased the compensation rate for non-governmental members from $30.00 to $50.00 "for each day or fraction thereof spent in the work of the Authority," *see* Act No. 5636, § 1(n) (V.I. Reg. Sess. 1990).[11]

---

the members from the District of St. Croix, and for a term of two years for one of the members from the District of St. Thomas-St. John, and for one of the members from the District of St. Croix. Any person appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed only for the remainder of such term, provided, however, that each member shall serve until the appointment and confirmation of his successor. Non-government members may be reappointed with the advice and consent of the Legislature. Government members shall serve during the term of their government position at the pleasure of the Governor. No government member shall be paid compensation in addition to his regular government salary by reason of his service on the Governing Board. Non-government members shall be compensated at the rate of $30.00 a day for each day or fraction thereof spent in the work of the Authority. All members shall be entitled to reimbursement for, or per diem in lieu of, necessary travel expenses.

Act No. 4108, § 1 (V.I. Reg. Sess. 1978).

[10] Act No. 4951 provided:

Section 1. The sixth sentence of section 103, Title 30, Virgin Islands Code, is amended to read as follows:

Non-government members may be reappointed with the advice and consent of the Legislature and such members may be removed for cause by the Governor.

Act No. 4951, § 1 (V.I. Reg. Sess. 1984).

Prior to the 1984 amendment, the sixth sentence of Section 103(a) read: "Non-government members may be reappointed with the advice and consent of the Legislature." *See supra*, note 9.

[11] Act No. 5636 provided:

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 8 of 62

2024 VI 30

¶ 7    In 2021,[12] the Legislature modified the Governing Board again, notwithstanding Governor

Bryan's veto, and passed Act No. 8472—the crux of this appeal—on August 20, 2021, effective

immediately. *See* Act No. 8472, § 1 (V.I. Reg. Sess. 2021). This time, in addition to adopting new

protocols and revising existing protocols for the Governing Board members, the Legislature also

altered the Governing Board's nine-member-composition which had remained the same since

1978.

¶ 8    According to its preamble, Act No. 8472 is "[a]n Act amending title 30 Virgin Islands Code,

chapter 5, subchapter II, section 103 relating to the Virgin Islands Water and Power Authority to

establish minimum criteria for the Virgin Islands Water and Power Authority Governing Board and

changing the number of its members; and amending section 104(b) to change the number of

members of the Governing Board constituting a quorum from five to four." *See id.* More

specifically, the following changes were made: (i) reduced the number of Governing Board

members from nine to seven by eliminating two out of three cabinet-level governmental members

and keeping the six non-governmental members; (ii) designated the Director of the Virgin Islands

Energy Office as the governmental member; (iii) mandated at least one of the three non-

---

Section 1(n). Title 30, Section 103, Subsection (a), Virgin Islands Code, is amended by deleting "$30.00" where it appears and inserting "$50.00" in lieu thereof.

Act No. 5636, § 1(n) (V.I. Reg. Sess. 1990).

[12] In 2019, the Legislature attempted to modify the Governing Board by proposing Bill No. 33-0210. More specifically, the Legislature sought to: (i) reduce the number of governmental members from three to one; (ii) mandate that the Governor appoint the governmental member from among the following—the Director of the Virgin Islands Energy Office, the Commissioner of the Department of Planning and Natural Resources for the Virgin Islands, or the Commissioner of the Department of Public Works for the Virgin Islands—rather than from among the heads of cabinet-level executive departments or agencies; (iii) increase the number of non-governmental members from six to eight with four residents of the District of St. Thomas-St. John and four residents of the District of St. Croix; (iv) mandate that no more than two of the non-governmental members from each district may reside outside the territory; (v) mandate that the appointed members must have formal education or experience in at least one of the enumerated fields; and (vi) increase the compensation rate for non-governmental members from $50.00 to $100.00 a day. Bill No. 33-0210 (V.I. Reg. Sess. 2019) (proposed Oct. 18, 2019). This Bill, however, was vetoed by the then Governor and never signed into law.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 9 of 62

governmental members from the District of St. Thomas-St. John to reside on St. John; (iv)

mandated that no more than two of the non-governmental members may reside outside the

territory; (v) increased the compensation rate for non-governmental members from $50.00 to

$175.00 a day; (vi) mandated that non-governmental members must have formal education or

experience in at least one of the enumerated fields set forth in 30 V.I.C. § 103(c); and (vi) mandated

that no Governing Board members may enter "into an employment relationship, consulting or

representation agreement or other similar contractual agreement with any entity contracted or

subcontracted by [WAPA] for a period of one year after the member ceases to serve as a member

on the Board." [13] *See id.*

---

[13] After the 2021 amendment, the current version of § 103 provides:

> (a) There is hereby created a body corporate and politic constituting a public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands, by the name of the "Virgin Islands Water and Power Authority", which shall be governed by a board consisting of the Director of the Virgin Islands Energy Office and six non-governmental members and who shall be appointed by the Governor with the advice and consent of the Legislature. Of the non-governmental members, three must be residents of the District of St. Thomas-St. John, of whom at least one must reside on St. John and three must be residents of the District of St. Croix. No more than two of the non-governmental board members, may reside outside of the territory. Non-governmental members shall be appointed for terms of three years, provided, however, that the first appointments made pursuant to this subsection shall be for a term of one year for one of the members from the District of St. Thomas-St. John, and for one of the members from the District of St. Croix, and for a term of two years for one of the members from the District of St. Thomas-St. John, and for one of the members from the District of St. Croix. Any person appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed only for the remainder of such term, provided, however, that each member shall serve until the appointment and confirmation of his successor. Non-government members may be reappointed with the advice and consent of the Legislature and such members may be removed for cause by the Governor. The Government member shall serve during the term of their government position at the pleasure of the Governor. The government member shall not be paid compensation in addition to his regular government salary by reason of his service on the Governing Board. Non-government members shall be compensated at the rate of $175 a day for each day or fraction thereof spent in the work of the Authority. All members shall be entitled to reimbursement for, or per diem in lieu of, necessary travel expenses.
>
> (b) The Authority hereby created is and shall be an autonomous governmental instrumentality subject, as provided for herein, to the control of the Governing Board thereof, but it is a corporation having legal existence and personality separate and apart from the Government. Subject to section 112(a) of this title, the debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, facilities, and property of the Authority shall be deemed to be those of said Authority and not to be those of the Government of the Virgin Islands, or any office, bureau, department, agency, commission, municipality, branch, agent, officer or employee thereof.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 10 of 62

2024 VI 30

¶ 9    The Legislature, despite noting its intention in the preamble to amend 30 V.I.C. § 104(b) to reduce the quorum requirement for the Governing Board from five members to four members, did not include any language making such amendments in Act No. 8472.

¶ 10    Thereafter, on August 27, 2021, the Attorney General of the Virgin Islands Department of Justice—on behalf of Governor Bryan—filed a complaint against WAPA in the Superior Court. Governor Bryan alleged various violations of the Revised Organic Act of 1954[14] (hereinafter "Revised Organic Act") by Act No. 8472[15] and sought injunctive relief and declaratory judgment.[16]

---

(c) Non-governmental members of the Governing Board must have formal education or experience in at least one of the following:

    (1) Engineering, power generation;
    (2) energy, natural resources conservation, environmental science, planning;
    (3) economics, accounting, finance;
    (4) public affairs;
    (5) law; or
    (6) Computer Technology Information Systems.

(d) No member of the Board may enter into an employment relationship, consulting or representation agreement or other similar contractual agreement with any entity contracted or subcontracted by the Authority for a period of one year after the member ceases to serve as a member on the Board.

30 V.I.C. § 103.

[14] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (2012), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1).

[15] In his complaint, Governor Bryan alleged the following causes of action:

First-"Unlawful Usurpation of the Governor's Executive Authority of General Supervision and Control of WAPA Board violates the Revised Organic Act";

Second-"Violation of the Separation of Powers and Revised Organic Act by Limitation and Usurpation the Governor's exclusive and intrinsic power of appointment and removal";

Third-"Violation of the Separation of Powers and Revised Organic Act by the 'for Cause' Limitation and Usurpation the Governor's exclusive and intrinsic power of removal";

Fourth-"Violation of Separation of Powers Doctrine by Intentional Usurpation or elimination of the Governor's Executive Authority of Removal of Cabinet Level Executives to the Board violates the Revised Organic Act and laws applicable to the Virgin Islands"; and

Fifth-"Violation of Separation of Powers Doctrine by Usurpation of Executive Responsibility thwarts and impedes the Governor's ability to faithfully execute the laws of the Virgin Islands and the United States applicable to Virgin Islands and violates the Revised Organic Act."

[16] In his complaint, Governor Bryan sought the following relief:

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 11 of 62

2024 VI 30

On the same date, Governor Bryan also filed a document titled "motion for temporary restraining order, preliminary injunction, and declaratory judgment" seeking "a temporary restraining order or preliminary injunction enjoining the restructuring of Defendant Virgin Islands Water and Power Authority's (WAPA's) governing Board... [and] a declaratory judgment that Act No. 8472 is in derogation of ROA § 11 and, therefore, void ab initio."

¶ 11 On September 9, 2021, WAPA's acting general counsel filed a notice of appearance on behalf of WAPA.

¶ 12 On September 10, 2021, before WAPA filed a response to the complaint or the motion, the Superior Court entered an order denying Governor Bryan's motion for a temporary restraining order and scheduling a hearing on Governor Bryan's motion for a preliminary injunction.

---

a. Issue temporary restraining order, as well as preliminary and permanent injunctions against WAPA (1) prohibiting and preventing WAPA from implementing or complying with Act No.8472, and (2) enjoining and restraining WAPA from prohibiting cabinet level executives appointed by a Governor from participating in Board meetings because Act No. 34-0026 is inorganic, unconstitutional, and therefore void.

b. Declare that Act No. 8472 violates the Revised Organic Act of 1954 and the Separation of Powers doctrine of the Constitution of the United States implicit therein, as the Legislature does not have the authority to create laws to restrict or limit the Governor's supervisory authority and/or control over the executive branch instrumentality by decreasing his ability to remove officials to the Board, impeding his duty to faithfully execute the laws.

c. Declare that a Governor holds the sole executive authority pursuant to Section 11 of the Revised Organic Act to appoint and remove members to agencies, instrumentalities, boards, and commissions of the Virgin Islands including, without limitation, the WAPA Board and that implementation of Act No. 8472 unlawfully and unconstitutionally usurps that authority.

d. Declare that Act No. 8472 is ultra vires legislative authority, unconstitutional, inorganic and therefore void ab initio as it violates Section 11 of the Revised Organic Act because it deprives or erodes the Governor's authority and powers to appoint to executive cabinet level members and to remove Board members.

e. Declare that 30 V.I.C. § 103(a), to the extent, it limits a Governor's power of removal of non-governmental members of the Board is inorganic and void ab initio as it violates Section 11 of the Revised Organic Act usurps the Governor's authority and powers to remove Board members.

f. Grant such other relief which this Court may deem just and appropriate.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 12 of 62

2024 VI 30

¶ 13    On September 17, 2021, WAPA filed its answer which, for the most part, admitted to the allegations in the complaint.[17] Notably, WAPA admitted to Governor Bryan's allegations that "Act No. 8472 violates Section 11 of the Revised Organic Act" and that "[Act No. 8472] is unconstitutional and inorganic."[18] (Answer ¶¶ 66, 73, 79, 83, 88).

¶ 14    On September 20, 2021, Governor Bryan and WAPA filed a stipulation consenting to the entry of a preliminary injunction order "enjoining, prohibiting, preventing and delaying implementation of the changes to the [Governing] Board, set in motion by Act No[.] 8472, and enjoining and restraining [WAPA] from removing any member discharged pursuant to Act No. 8472 or otherwise implementing any of the changes to the composition and/or means of appointment to the [Governing] Board, which shall maintain its composition per the status quo prior to the passage of Act No. 8472" until expiration of the order.

¶ 15    On September 21, 2021, the Superior Court entered a preliminary injunction order consistent with Governor Bryan and WAPA's stipulation to maintain the status quo of the Governing Board, and entered another order scheduling a hearing on Governor Bryan's request for a permanent injunction and declaratory judgment.[19]

¶ 16    On October 5, 2021, the scheduled hearing was held before the Superior Court.

---

[17] In instances where WAPA did not admit to the allegations, WAPA either indicated that "no response was required" or that it can "neither admit nor deny"; WAPA did not deny any allegations.

[18] *See supra*, note 1.

[19] In their respective briefs, Governor Bryan and WAPA frequently characterized this request as Governor Bryan's motion for permanent injunction and declaratory relief. Similarly, in the March 8, 2023 memorandum opinion and order the Superior Court, at times, also characterized this request as Governor Bryan's motion for permanent injunction and declaratory relief.

However, Governor Bryan never filed such a motion. Instead, Governor Bryan requested the relief for permanent injunction in his complaint. For accuracy, we will address this as a request unless quoting directly from Governor Bryan, WAPA, or the Superior Court.

*Bryan and GVI v. WAPA*                2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 13 of 62

¶ 17    On March 8, 2023, the Superior Court issued an order denying Governor Bryan's request for a permanent injunction and declaratory judgment and lifting the Superior Court's September 20, 2021 preliminary injunction order enjoining WAPA from the enforcement and implementation of Act No. 8472. In the accompanying memorandum opinion, the Superior Court—after conducting a well-researched and soundly-reasoned analysis—determined that "Act No. 8472 does not violate the separation of powers doctrine and is a valid exercise of legislative authority," and, as a result, pointed out that Governor Bryan "ha[s] not met any of the factors requiring injunctive relief" and "ha[s] failed on the merits [in the claim for declaratory judgment]."

¶ 18    On March 24, 2023, Governor Bryan timely filed a notice of appeal of the Superior Court's March 8, 2023 memorandum opinion and order (collectively, hereinafter "March 8, 2023 Order"). *See* V.I.R.APP.P. 5(a)(1). After Governor Bryan filed his appellate brief and WAPA filed its appellee brief in response thereto, the Amicus Curiae Legislature (hereinafter "Amicus")[20]—with leave of this Court—filed a brief as "amicus curiae in support of neither party." Thereafter, Governor Bryan filed his reply brief.

¶ 19    On March 30, 2023, Governor Bryan filed a motion for a stay of the Superior Court's March 8, 2023 Order pending appeal, which this Court denied in an order entered on April 4, 2023. In the unpublished per curiam opinion accompanying the April 4, 2023 order, this Court considered the four factors for a stay pending appeal outlined in *In re Najawicz,* 2009 V.I. Supreme LEXIS 2, at *5-6 (V.I. Jan. 8, 2009) (unpublished), and concluded that Governor Bryan "failed to satisfy [his]

---

[20] This Court will use the term "Amicus" when referring specifically to the amicus curiae in this appeal and the term "Legislature" when referring generally to the Legislature of the Government of the Virgin Islands.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 14 of 62

2024 VI 30

burden with respect to any of these factors." *Bryan v. V.I. Water & Power Auth.*, 2023 V.I. Supreme LEXIS 5, at *3 (V.I. Apr. 4, 2023) (unpublished).

¶ 20    On March 12, 2024, Governor Bryan and the Amicus appeared before this Court for oral argument; WAPA appeared at the hearing but did not address the Court.[21]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 21    The Revised Organic Act provides this Court with appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law..." 48 U.S.C. § 1613a(d). Title 4, § 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). An "order that disposes of all claims submitted to the Superior Court is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)). The Superior Court's March 8, 2023 Order resolved all the claims raised in Governor Bryan's complaint when it upheld the constitutionality of Act No. 8472, denied Governor Bryan's request for a permanent injunction enjoining WAPA from the enforcement and implementation of Act No. 8472, and denied Governor Bryan's request for a declaratory judgment declaring that Act No. 8472 is unconstitutional. Hence, it constitutes a final order within the meaning of § 32(a) and conferred jurisdiction on this Court.

¶ 22    Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). This Court reviews the Superior Court's "decision to grant or

---

[21] *See supra*, note 1.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 15 of 62

2024 VI 30

deny a permanent injunction… for abuse of discretion." *Streibich v. Underwood*, 74 V.I. 488, 499 (V.I. 2021). "An abuse of discretion arises only when the decision rests upon a clearly erroneous finding a fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citations omitted). Likewise, this Court reviews the Superior Court's decision regarding declaratory relief under the Virgin Islands Declaratory Judgments Act, 5 V.I.C. §§ 1261 et seq., for abuse of discretion if the Superior Court refuses to exercise jurisdiction over a declaratory action that it would otherwise be statutorily empowered to hear; however, once a trial court determines that a matter is appropriate for declaratory judgment, this Court reviews the Superior Court's construction of statutes essential to that determination on a plenary basis.[22] *See V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 56 V.I. 508, 511 (V.I. 2012) (citing *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008)). In other words, once the Superior Court decides that a matter is appropriate for declaratory judgment, its holdings regarding questions of law by statutory interpretations are subject to plenary review. *See State ex rel. Denz v. Matlack*, 2024 Ohio App. LEXIS 968, **9-10 (Ohio Ct. App. 2024) ("[A]n appellate court reviewing a declaratory-judgment matter should apply an abuse-of-discretion standard in regard to the trial court's holding concerning the appropriateness of the case for declaratory judgment… and should

---

[22] We have not previously addressed the standard of review applicable to an award or denial of declaratory relief under the Virgin Islands Declaratory Judgments Act. Under the Virgin Islands Declaratory Judgments Act, the Superior Court has discretion in determining whether to entertain a declaratory action, *see* 5 V.I.C. § 1266 ("The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."), and upon exercising jurisdiction over the declaratory action, the Superior Court has the power to grant or deny declaratory relief, *see* 5 V.I.C. § 1261 ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."); *see also, see* 5 V.I.C. § 1262 ("Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.").

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 16 of 62

2024 VI 30

apply a de novo standard of review in regard to the trial court's determination of legal issues in the case.") (quoting *Arnott v. Arnott*, 972 N.E.2d 586, 587 (Ohio 2012)).

## B. Overview of Issues

¶ 23    On appeal,[23] Governor Bryan argues that Act No. 8472 is "inorganic and unconstitutional." First, Governor Bryan asserts that Act No. 8472, "on its face, violates the separation of powers doctrine." He reasons that WAPA falls under the province of the executive branch of the Government of the Virgin Islands (hereinafter "Executive Branch") because "WAPA performs the purely executive function of providing electrical power and water to the Virgin Islands." Thus, Governor Bryan concludes that, in enacting Act No. 8472, the Legislature (i) "intentionally, purposefully, and inorganically encroached on the province of the Executive by decreasing the Governor's supervision and control of the Board by reducing the number of cabinet members that served at his pleasure from three out of nine Board members…[and] by directly appointing the Director of the Energy Office to the board," (ii) "unconstitutionally and inorganically limited the Governor's appointment discretion to the Energy Officer Director," and (iii) "violated the separation of powers doctrine because it removed board members—a right reserved to the Governor by the ROA" and the "violation is even worse because the nongovernmental Board members can be terminated only for cause."

---

[23] In his appellate brief, Governor Bryan listed the following "statement of issues":

> 1. Whether [sic], which changed the structure of the Governing Board of the Virgin Islands Water and Power Authority, is inorganic and unconstitutional because it violates the separation of powers doctrine under the Revised Organic Act of 1954 § 11, as amended.

> 2. Whether the Superior Court erred when it ruled that Act No. 8472 did not violate the separation of powers doctrine and was constitutional under the Revised Organic Act.

> 3. Whether the Superior Court abused its discretion by lifting the preliminary injunction and denying Appellants/Plaintiffs' motion for permanent injunction and declaratory relief.

*Bryan and GVI v. WAPA*                    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 17 of 62

¶ 24    Second, Governor Bryan asserts that Act No. 8472 "is unconstitutional because the

Legislature encroached on the power of the executive without any legitimate reason and because

the act, as applied, is arbitrary" and points out that "the Fourteenth Amendment and the ROA

prevent the deprivation of equal protection under the law, which requires the court to conduct

qualitative analyses of statues." More specifically, Governor Bryan avers that "[r]emoving

governmental employees from the Board who meet the Act's experience and educational

requirements simply because they work for the government is a 'capricious and unreasonable act

of will' by the Legislature, unconnected to any legitimate goal to justify the overreach."

¶ 25    Thus, Governor Bryan also argues that the Superior Court erred when it "failed to find

[that] the Act was ultimately unconstitutional" and that "the Superior Court abused its discretion

by lifting the preliminary injunction and denying [his] motion for permanent injunction and

declaratory relief." For these reasons, Governor Bryan requests this Court to "vacate the Superior

Court's [March 8, 2023] Order, find the Act violates the separation of powers doctrine and grant

[his] request for permanent injunction and declaratory relief."

¶ 26    In its appellee brief,[24] WAPA agrees with Governor Bryan that it performs "a purely

executive function" and that "Act 8472, which removes two members of the Governing Board of

the Virgin Islands Water and Power Authority, names the Director of Energy as a member of the

---

[24] In its appellee brief, WAPA listed the following "statement of issues":

> 1. Whether Act No. 8472, which changed the structure of the Governing Board of the Virgin Islands Water and Power Authority, is inorganic and unconstitutional because it violates the separation of powers doctrine under the Revised Organic Act of 1954 § 11, as amended.

> 2. Whether the Superior Court erred when it ruled that Act No. 8472 did not violate the separation of powers doctrine and was constitutional under the Revised Organic Act.

> 3. Whether the Superior Court abused its discretion by lifting the preliminary injunction and denying Plaintiffs' motion for permanent injunction and declaratory relief.

*Bryan and GVI v. WAPA*  2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 18 of 62

Board, and limits the removal of all other members of the Board, violates the Separation of Powers Doctrine..." Thus, WAPA similarly argues that Act No. 8472 "must be deemed inorganic" and that "[t]he Superior Court abused its discretion when it denied [Governor Bryan's] motion seeking [permanent injunction and declaratory relief]." For these reasons, WAPA requests this Court to "declar[e] Act [No.] 8472 inorganic and permanently enjoin[] the Legislature from making these changes."

¶ 27 In its amicus curiae brief, the Amicus argues that Act No. 8472 does not violate the separation of powers doctrine. First, "Act No. 8472 does not affect the Governor's appointment or removal powers [or] infringe on the Governor's powers under section 11 of the Revised Organic Act [because] Act No. 8472 merely decreased the historical number of board members and established minimum professional criteria for some board members." Second, Act No. 8472 does not violate Section 16 of the Revised Organic Act because the Legislature "did what it is 'constitutionally' permitted to do when it enacted Act No. 8472." Third, "the amendments…made to 30 V.I.C. § 103 in Act No. 8472 are well within its inherent legislative power to amend, alter, modify, or repeal any law it previously enacted." Accordingly, the Amicus requests this Court to affirm the Superior Court's March 8, 2023 Order.

¶ 28 In his reply brief, Governor Bryan adds to his previous argument by asserting that "[u]nder Section 16(b), it is the Governor's role to change the government's instrumentalities' board members from time to time, subject to the approval of the Legislature (the Legislature's advice and consent role under Section 16(c))." Thus, Governor Bryan now also argues that Act No. 8472 "violates the separation of powers doctrine by impermissibly precluding the appointment of

*Bryan and GVI v. WAPA*    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 19 of 62

additional governmental appointees to the WAPA [Governing] Board as part of the [Office of the

Governor's] executive (delegation) authority, prescribed in Sections 11 and 16(b) of the ROA."

### C. Whether Act No. 8472 is Unconstitutional for Violation of the Separation of Powers Doctrine under the Revised Organic Act[25]

¶ 29    When the United States Congress enacted the Revised Organic Act, it "not only delegated

certain powers to the Government of the Virgin Islands, but also established a system of separation

of powers within its branches, with executive functions vested in the Executive Branch, legislative

functions vested in the Legislative Branch, and judicial functions vested in the Judicial

Branch." *Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1084 (V.I. 2019) (citing *Kendall v.

Russell*, 572 F.3d 126, 135 (3d Cir. 2009)); *see Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304,

329 (1816) ("The object of the constitution was to establish three great departments of

government; the legislative, the executive, and the judicial departments. The first was to pass laws,

the second to approve and execute them, and the third to expound and enforce them."). "Unless

otherwise expressly provided or incidental to the powers conferred, the Legislature cannot exercise

either executive or judicial power; the executive cannot exercise either legislative or judicial

power; [and] the judiciary cannot exercise either executive or legislative power." *Bryan v. Fawkes*,

61 V.I. 201, 212 (V.I. 2014) (quoting *Springer v. Gov't of the Philippine Islands*, 277 U.S. 189,

201-02 (1928)).

---

[25] In addition to claiming that Act No. 8472 is unconstitutional, Governor Bryan and WAPA also claim that Act No. 8472 is "inorganic." In *Limetree Bay Terminals, LLC v. Liger*, this Court addressed the issue of describing a challenge to a Virgin Islands statute brought pursuant to the Revised Organic Act as a claim that the statute is "inorganic." 2024 V.I. Supreme LEXIS 26 (V.I. Aug. 2, 2024). In *Limetree Bay Terminals,* this Court explained:

> We decline to adopt th[e] term ["inorganic"] because, as this Court recognized in *Balboni*, a charter of government need not bear the name "constitution" to function as a constitution. In addition to needlessly distinguishing between territorial organic acts and territorial constitutions "without any historical or legal basis," Ciolli, 58 IDAHO L. REV. at 246, the word "inorganic" is a malapropism in this context because the

*Bryan and GVI v. WAPA*          2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 20 of 62

¶ 30    As a threshold matter, Governor Bryan's attempt to draw a distinction between "facial"

and "as-applied" separation of powers challenges under the Revised Organic Act is unavailing.[26]

This Court recently discussed in *Limetree Bay Terminals* the legal context of why federal courts

utilize different tests for "facial" and "as-applied" challenges[27] and noted that "it does not appear

that this Court has *ever* distinguished between 'facial' and 'as-applied' challenges based on the

Revised Organic Act, rather than the United States Constitution." 2024 V.I. Supreme LEXIS 26,

---

word "organic" is being used as the adjective form of the noun "organization." See *People v. Clark*, 53 V.I. 183, 193 (V.I. Super. Ct. 2010) ("An organized territory has an organic act—an act of Congress that establishes its government."). Under traditional rules of English usage and grammar, describing laws as "inorganic" would not mean that these are "laws that are inconsistent with the Organic Act," *Leon Guerrero*, 2023 Guam 11 ¶ 63 (Carbullido, J., concurring); rather, it literally means that the laws are *not organized*. But "not organized" and its variant "unorganized" are themselves terms of art that simply mean that Congress has not authorized a territory's government; importantly, it does not mean that the territorial government or the laws it enacted without Congress's approval are illegal or void. *See* Jon. M. Van Dyke, *The Evolving Legal Relationship Between the United States and its Affiliated U.S. Flag Islands*, 14 U. HAW. L. REV. 445, 450 (1992) (noting that American Samoa is not an organized territory even though it operates a civil government with an elected governor and elected legislature). Therefore, we will continue our practice of using the word "unconstitutional" to refer to statutes, rules, or other authorities which are inconsistent with either the federal constitution or our *de facto* territorial constitution, the Revised Organic Act.

    *Id.*, at *10 n.2.

For the reason we stated in *Limetree Bay Terminals,* this Court will treat Governor Bryan and WAPA's challenge to Act No. 8472 as a constitutional challenge and disregard their claims that Act No. 8472 is "inorganic."

[26] In his appellate brief, Governor Bryan argues that "the Act, on its face, violates the separation of powers doctrine" and that "the Act is unconstitutional because the Legislature encroached on the power of the executive without any legitimate reason and because the act, as applied, is arbitrary."

Interestingly, it appears that Governor Bryan only brought a facial challenge in the underlying matter. In his August 27, 2021 motion therein, Governor Bryan argued that "Act No. 8472 'impermissibly, facially, and beyond a reasonable doubt interferes with the Governor's ability to ensure that the laws are faithfully executed.'" (J.A. 112). In its March 8, 2023 memorandum opinion, the Superior Court indicated that Governor Bryan is "bringing a facial challenge, rather than an as-applied challenge" and thus concluded that question before it is "whether, on its face, Act No. 8472 is unconstitutional and violates the Revised Organic Act of 1954."

Nevertheless, Governor Bryan raising an as-applied challenge for the first time on appeal is immaterial due to our characterization of actions that violate the separation of powers doctrine.

[27] In *Limetree Bay Terminals*, this Court explained:

    …The different standards employed by the federal courts stem from the constraints of Article III of the United States Constitution, which limit the jurisdiction of the federal courts only to consideration of cases and controversies…

    Yet this concern is wholly irrelevant to the Virgin Islands context: unlike the federal courts, the courts of the Virgin Islands are not courts of limited jurisdiction organized under Article III and possess the authority to adjudicate more than just cases and controversies.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 21 of 62

2024 VI 30

at *25-27 (emphasis in original). Here, similar to the litigant in *Limetree Bay Terminals*, Governor Bryan fails to explain "why this Court should incorporate this aspect of federal constitutional interpretation into Virgin Islands separation of powers jurisprudence" and also fails to provide "any legal authority to support [his] claim that there is a distinction between 'facial' and 'as-applied' separation of powers challenges in the first place." *See id.* at *27-28. As such, this Court will continue to characterize actions that violate the separation of powers doctrine as structural violations rather than draw distinctions between types of separation of powers challenges. *See id.* at *29 ("The failure of any courts to draw distinctions between types of separation of powers challenges is not surprising: unlike claims that a statute violates due process or equal protection, the Supreme Court of the United States, lower federal courts, and state courts of last resort have consistently characterized actions that violate the separation of powers as structural violations of the constitution.") (emphasis in original).

¶ 31    To determine whether Act No. 8472 violates the separation of powers doctrine under the Revised Organic Act, this Court must analyze the authorities of the legislative branch of the Government of the Virgin Islands (hereinafter "Legislative Branch") and the Executive Branch to determine whether the Legislature's enactment of Act No. 8472 infringed upon the power of the Executive Branch.[28]

---

2024 V.I. Supreme LEXIS 26, at *27-28 (citations omitted).

[28] In its March 8, 2023 memorandum opinion, the Superior Court—citing *Sekou v. Moorhead*, 72 V.I. 1048 (V.I. 2020)—stated that this Court "has set forth a two-prong test to determine the existence of a separation of powers issue" and that it "must examine: 'the extent to which [the challenged statute] prevents the [particular] Branch from accomplishing its constitutionally assigned functions ...[and] [i]f it does, a further inquiry must be made as to whether that impact is justified by an overriding need to promote objectives within the constitutional authority of the acting branch.'" This Court must point out that the two-prong test was not set forth in the majority opinion of *Sekou*—but in the concurring in part and dissenting in part opinion—and should not be attributed to this Court. 72 V.I. at 1076-77 (Swan, J., concurring in part and dissenting in part).

*Bryan and GVI v. WAPA*          2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 22 of 62

### 1. The Legislative Power and the Executive Power under the Revised Organic Act

¶ 32     The Revised Organic Act vests the Legislature with the "legislative power and authority of the Virgin Islands," 48 U.S.C. § 1571, which it may exercise with respect to "all rightful subjects of legislation not inconsistent with [the Revised Organic Act] or the laws of the United States made applicable to the Virgin Islands." Revised Organic Act of 1954, §8(a), 48 U.S.C. § 1574(a). The Legislature is expressly given the authority to "enact new laws" and to "to amend, alter, modify, or repeal any local law or ordinance, public or private, civil or criminal." Revised Organic Act of 1954, §8(c), 48 U.S.C. § 1574(c). "This is consistent with the well-established principle that the power to make the law is the quintessential legislative power." *Save Coral Bay, Inc. v. Bryan*, 76 V.I. 505, 510-11 (V.I. 2022) (collecting cases). But the Revised Organic Act itself places structural limits on the authority of the Legislature to make or amend law, such as providing that any such legislation cannot be inconsistent with other provisions of the Revised Organic Act or any law of the United States applicable to the Virgin Islands. *See* Revised Organic Act of 1954, §8(c), 48 U.S.C. § 1574(c) ("[T]he legislature shall have power, when within its jurisdiction and not inconsistent with the other provisions of this Act [48 USCS §§ 1541 et seq.], to amend, alter,

---

In *Sekou*, the appellants appealed, *inter alia*, the trial court's denial of their motion to disqualify the Virgin Islands Department of Justice from representing Gomez—one of the appellees—in the underlying matter. The majority opinion held that the trial court "committed no error when it denied the motion to disqualify" and explained that "because the issue of whether the Department of Justice is authorized to represent Gomez rests on a pure question of statutory interpretation, and that statute has already been interpreted by this Court to permit such representation, there was no colorable factual basis to support disqualifying the Attorney General." 72 V.I. at 1056-57. The majority did not reach the separation of powers issue in the body of the opinion because, based on their interpretation of the relevant statute 3 V.I.C. § 114, and "[b]ecause the Department of Justice and the Board of Education are both within the executive branch," they concluded that "permitting the Department of Justice to represent Gomez as Vice-Chair of the Board poses no separation of power concerns." *Id.*, at 1057 n.5. Nevertheless, the majority briefly addressed—in a footnote—"the potential constitutional conundrums relating to the separation of powers doctrine" raised in the concurring in part and dissenting in part opinion and made no mention of the two-prong test. *Id.*, at 1057 n.5.

*Bryan and GVI v. WAPA*                                    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 23 of 62

modify, or repeal any local law or ordinance, public or private, civil or criminal, continued in force and effect by this Act [48 USCS §§ 1541 et seq.], except as herein otherwise provided, and to enact new laws not inconsistent with any law of the United States applicable to the Virgin Islands, subject to the power of Congress to annul any such Act of the legislature.").

¶ 33    "The executive power of the Virgin Islands," under the Revised Organic Act, is "vested in...the 'Governor...'" and the Governor, *inter alia*, "shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of the Virgin Islands, ... shall appoint, and may remove, all officers and employees of the executive branch of the government of the Virgin Islands, except as otherwise provided in this or any other Act of Congress, or under the laws of the Virgin Islands, [and] ... shall be responsible for the faithful execution of the laws of the Virgin Islands and the laws of the United States applicable in the Virgin Islands." Revised Organic Act of 1954, § 11, 48 U.S.C. § 1591. In other words, while the Governor has broad authority over the Executive Branch, it is not without limits but subject to the Legislature's exercise of lawmaking power. *See Bryan v. V.I. Water & Power Auth.*, 2023 V.I. Supreme LEXIS 5, at *5 (V.I. Apr. 4, 2023) ("[T]he plain text of section 11 expressly provides that 'the laws of the Virgin Islands' may restrict the power of the Governor to appoint and remove officers and employees of the Executive Branch.") (unpublished).

¶ 34    Governor Bryan and WAPA's separation of powers arguments are entirely premised on the assumption that WAPA falls squarely within the Executive Branch and, accordingly, the Governor has appointment power, removal power, and general supervision power over WAPA and the Governing Board. However, aside from their bold assertions that WAPA performs a purely

*Bryan and GVI v. WAPA*          2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 24 of 62

executive function,[29] and on that premise concluding that WAPA is a purely executive agency, Governor Bryan and WAPA do not provide any reasoning or identify any evidence or legal support for such proposition. While it does not address in its amicus curiae brief whether WAPA falls within the Executive Branch, Amicus argued at the hearing for oral argument that Governor Bryan incorrectly conflates "Executive Branch" with "Executive Department," because while WAPA— an autonomous agency—may be part of the Executive Branch, it is not an "Executive Department," and thus, any modification to the Governing Board by the Legislature cannot infringe upon the Governor's authority.

¶ 35    Thus, before this Court reaches the question of whether Act No. 8472 violates the separation of powers doctrine, we will first address whether WAPA—"a public corporation and autonomous governmental instrumentality"—falls within the Executive Branch.[30]

---

[29] In his appellate brief, Governor Bryan asserts that "WAPA performs the purely executive function of providing electrical power and water to the Virgin Islands." (Appellant's Br. 2).

In its appellee brief, WAPA asserts that its Governing Board was "established…for the purpose of developing the electrical and water infrastructure of the Virgin Islands, a purely executive function." (Appellee's Br. 11).

[30] In its March 8, 2023 memorandum opinion, the Superior Court—citing *V.I. Taxi Ass'n v. West Indian Co.*, 66 V.I. 473 (V.I. 2017)—stated that "[t]he Virgin Islands Code treats public corporations as public agencies." This Court must point out that, in *V.I. Taxi Ass'n*, it was stated in dicta that a public corporation qualifies as a public agency and is therefore a part of the Executive Branch.

In *V.I. Taxi Ass'n*, this Court addressed the Virgin Islands Taxi Association's standing to challenge the West Indian Company's decision to award a contract to another company for the operation of its business. This Court used the definition of "public agency" provided in the conflict-of-interest statutes—3 V.I.C. §§ 1101 et seq.—that apply generally to the Executive Branch to interpret the phrase "territorial officer or employee" in the taxpayer suit statute— 5 V.I.C. § 80—which did not define the phrase, and thus concluded that "[s]ince the Virgin Islands Code treats public corporations as public agencies, Boschulte is an officer of a public agency [West Indian Company], and taxpayers may sue under section 80 to prevent him from engaging in illegal or unauthorized acts. *V.I. Taxi Ass'n*, 66 V.I. at 484-85.

The questions of whether a public corporation—and more specifically, whether a public corporation like WAPA— falls under the Executive Branch were not issues raised or addressed in *V.I. Taxi Ass'n*. In short, the circumstances in *V.I. Taxi Ass'n* are readily distinguishable from those presented in the case at bar. This Court's holding and reasoning therein, accordingly, is not controlling in the present dispute.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 25 of 62

2024 VI 30

## 2. Whether WAPA Falls Within the Executive Branch

¶ 36    The Legislature, in creating WAPA, repeatedly emphasized WAPA's autonomy as "a corporation having legal existence and personality separate and apart from the Government." *See* 30 V.I.C. § 105(1), (2), (4) (WAPA is granted the power "to have perpetual existence as a corporation," "to adopt, alter, and use a corporate seal which shall be judicially noticed," and "to sue and be sued in its corporate name"). This autonomy is further evidenced by its self-governance and self-sufficiency—to wit, under its enabling statute, WAPA is managed by its own Governing Board with its own by-laws,[31] draws its own revenue from its customers,[32] manages its own budget,[33] has the power of eminent domain,[34] has its own obligations and assets,[35] has the power

---

[31] WAPA is set up to be solely and completely governed by the Governing Board. *See e.g.*, 30 V.I.C. § 104(a) ("The powers of the Authority shall be exercised by a Governing Board consisting of the members of the Authority acting as a board."); 30 V.I.C. § 105(3) (WAPA is granted the power "to make, and from time to time modify, and repeal, bylaws, rules and regulations, not inconsistent with this chapter, providing for the internal organization and management of the Authority, for the administration of its affairs and operations, and for carrying into effect the powers and purposes of the Authority."); 30 V.I.C. 121(a) ("No officer, board, commission, department or other agency or political subdivision of the Virgin Islands shall have jurisdiction over the Authority in the management and control of its properties and facilities or any power to require a certificate of convenience or necessity, license, consent, or other authorization in order that the Authority may acquire, lease, own and operate, construct, maintain, improve, extend or enlarge any facility.").

[32] WAPA draws its revenue from payments made by territorial users of electricity and water. *See e.g.*, 30 V.I.C. 105(12) ("…that in fixing rates, fees, and other charges for water and electric power, the Authority shall have in view the encouragement of the widest economically possible use of water and electric power consistent with sound fiscal management").

[33] WAPA's budgets are approved by the Governing Board without input from the Governor. *See e.g.*, 30 V.I.C. § 115(a) ("The disbursements shall be made by it pursuant to regulations and budgets approved by the Board."); WAPA By-Laws, Art. XXIV ("The functions of the Executive Director (CEO) shall be: … To direct the preparation of budgets;…) (JA. 138); WAPA By-Laws, Art. XXIII ("An annual budget shall be submitted by the Executive Director (CEO) to the Governing Board not later than sixty (60) days before the commencement of the next fiscal year. The budget shall be approved by the Governing Board and may be modified for reasons of economy, efficiency, or emergency.") (J.A. 140).

[34] *See* 30 V.I.C. § 105(6).

[35] *See e.g.*, 30 V.I.C. § 103(b) ("[T]he debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, facilities, and property of the Authority shall be deemed to be those of said Authority and not to be

*Bryan and GVI v. WAPA*                    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 26 of 62

to borrow money and issue bonds,[36] and follows its own competitive bidding statute to procure

purchases or contracts,[37] to name a few examples. Nevertheless, an independent agency cannot

---

those of the Government of the Virgin Islands, or any office, bureau, department, agency, commission, municipality, branch, agent, officer or employee thereof"); 30 V.I.C. § 105(6) (WAPA is granted the power "to acquire property, real, personal, or mixed, tangible or intangible, or any interest therein deemed by it to be necessary or desirable for carrying out the purposes of the Authority (including its own securities) by any lawful means (including, but without limitation, the exercise of the power of eminent domain in accordance with chapter 19 of Title 28), and to own, hold, develop, improve, redevelop, enlarge, extend, repair, maintain, use and operate said property").

[36] *See e.g.*, 30 V.I.C. 105(8) (WAPA is granted the power "to borrow money, make and issue bonds of the Authority for any of its corporate purposes, and give security therefor as provided for in subchapter III of this chapter"); 30 V.I.C. 105(9) (WAPA is granted the power "to make and issue bonds for the purpose of funding, refunding, purchasing, paying, or discharging any of the outstanding bonds or obligations issued or assumed by it"); 30 V.I.C. § 106(a) ("...the Authority may issue and sell bonds from time to time...").

[37] WAPA's competitive bidding and procurement procedure is governed by 30 V.I.C. § 116, titled "Competitive bidding," while the Government of the Virgin Islands' competitive bidding and procurement procedure is governed

*Bryan and GVI v. WAPA*                          2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 27 of 62

truly be independent because, without a principal, there can be no agent. It is undeniable that

WAPA is inextricably part of the Government of the Virgin Islands (hereinafter "Government"),[38]

but which branch of the Government?

---

by title 31, chapter 23 of the Virgin Islands Code, titled "Procurement and Sale." *Compare* 30 V.I.C. § 116(a) ("All purchases and contracts for supplies for services, except for personal services, made by the Authority, including contracts for the construction of facilities of the Authority, shall be made after advertisement for bids sufficiently in advance of opening bids for the Authority to secure appropriate notice and opportunity for competition; provided, that where the expense estimated to be necessary in connection with the purchase or work does not exceed $10,000 the same may be carried out without advertisement for bids. Advertisement for bids shall not be required, however, when—(1) an emergency requires immediate delivery of the materials, supplies, equipment, or performance of the services; or (2) repair parts, accessories, or supplemental equipment or services are required for supplies or service previously furnished or contracted for; or (3) professional, financial (including financial printing) or other expert services or work are required and the Authority shall deem it best in the interest of good administration that contracts therefor be made without such advertisement; or (4) prices are noncompetitive because there is only one source of supply or because regulated under law; in such case the purchase of such materials, supplies, or equipment, or procurement of such services, may be made in the open market in the manner usual in commercial practice. In the comparison of bids and the making of awards, due consideration shall be given to such factors (in addition to whether the bidder has complied with the specifications) as the bidder's ability to perform construction work of the kind involved in the construction contract under consideration; the relative quality and adaptability of materials, supplies, equipment, or services; and the time of delivery or performance offered. The Authority may prescribe rules and regulations for the submission of bids."), *with* 30 V.I.C. § 235 ("All purchases of and contracts for supplies, materials equipment and contractual services must be conducted in a manner providing for full and open competition consistent with the standards of this chapter. All procurement transactions must be conducted through competitive bids or competitive proposals except as otherwise provided by this chapter."), *and* 30 V.I.C. § 236 (setting forth competitive bidding procedures), *and* 30 V.I.C. § 239 (setting forth occasions when "[s]upplies, material and equipment may be purchased and contractual services negotiated for, [can be made] in the open market without observing the provisions of section 236 of this title provided…" and procedures for open market purchases).

[38] *See e.g.,* 1 V.I.C. §§ 253, 254 (The Governing Board is considered a "governmental agency" and is required to open its meetings to the public barring certain exceptions.); 3 V.I.C. § 530 (WAPA employees can appeal to the Public Employees Relations Board.); 33 V.I.C. § 3039a ("There is established in the Treasury of the Virgin Islands a separate and distinct fund to be designated the "Virgin Islands Water and Power Authority Generating and Infrastructure Fund" and "[t]he Commissioner of Finance shall disburse monies in the Fund to the Virgin Islands Water and Power Authority on a quarterly basis."); 30 V.I.C. § 112 ("For the purpose of assisting the Authority with its financing, the Government of the Virgin Islands, to the extent permitted by the Revised Organic Act of the Virgin Islands, as amended, or any other applicable Federal law, may—(1) guarantee payment of the bonds of the Authority, both as to principal and interest; (2) employ its funds in the purchase of the bonds of the Authority, notwithstanding any provision of any law to the contrary."); 30 V.I.C. § 115(a) (For example, WAPA is required to deposits its moneys "in qualified depositories for funds of the Government of the Virgin Islands" but they are "kept in separate accounts in the name of the Authority"); 30 V.I.C. § 117(a) ("The Authority shall contribute to the Retirement System of the Government of the Virgin Islands its share of the cost of the retirement of the officials and employees on the basis of semiannual billings as determined by the Division of Personnel, Government of the Virgin Islands, and the contribution of officials and employees for retirement shall be deducted from the salaries in the same manner as in the case of regular employees of the Government of the Virgin Islands and shall be paid semiannually to the Retirement Fund of the Government of the Virgin Islands.").

*Bryan and GVI v. WAPA*                            2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 28 of 62

¶ 37    "Constitutionally speaking, an independent agency belongs neither to the Legislative

Branch nor to the Judicial Branch of Government. Although Members of this Court have referred

to agencies as a 'fourth branch' of Government, the agencies, even 'independent' agencies, are

more appropriately considered to be part of the Executive Branch."[39] *Federal Maritime*

*Commission v. S.C. State Ports Auth.*, 535 U.S. 743, 773 (2002) (Justices Breyer, Stevens, Souter

and Ginsburg dissenting); *see Sekou v. Moorhead*, 72 V.I. 1048, n.5 (V.I. 2020) (citing *St. Croix*

*Avis v. West Indian Co., Ltd.*, 71 V.I. 39, 59 (V.I. Super. 2019) ("There is no fourth branch of

government. So, [the independent agency] is not a fourth branch of the Virgin Islands

Government[,] [b]ut is part of the executive branch.")). Under these principles, WAPA—an

independent agency—is more appropriately considered to be part of the Executive Branch.

However, no one can ignore that WAPA is an anomaly: a wholly unique statutory creature cloaked

with unique statutory powers to operate independently, without interference from the Government

in carrying  out its "purpose of developing and utilizing and aiding in the development and

---

[39] *See e.g, FTC* v. *Ruberoid Co.*, 343 U.S. 470, 487 (1952) (Jackson, J., dissenting) ("The[] administrative bodies] have become a veritable fourth branch of the Government, which has deranged our three-branch legal theories much as the concept of a fourth dimension unsettles our three-dimensional thinking."); *Process Gas Consumers Grp. v. Consumer Energy Council*, 463 U.S. 1216, 1219 (1983) (White, J. dissenting) ("To invalidate the device, which allows Congress to maintain some control over the lawmaking process, merely guarantees that the independent agencies, once created, for all practical purposes are a fourth branch of the Government not subject to the direct control of either Congress or the Executive Branch."); *Freytag v. Commissioner*, 501 U.S. 868, 921 (1991) (Scalia, J., joined by O'Connor, J., Kennedy, J., and Souter, J., concurring in part and concurring in the judgment) ("Depending upon how broadly one reads the President's power to dismiss "for cause," it may be that he has no control over the appointment of inferior officers in such agencies; and if those agencies are publicly regarded as beyond his control -- a "headless Fourth Branch" -- he may have less incentive to care about such appointments."); *City of Arlington v. FCC*, 569 U.S. 290, 314 (2013) (Roberts, C.J., joined by Kennedy, J. and Alito, J., dissenting) ("The collection of agencies housed outside the traditional executive departments, including the Federal Communications Commission, is routinely described as the "headless fourth branch of government," reflecting not only the scope of their authority but their practical independence."); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 240 (2020) (Thomas, J., joined by Gorsuch, J. concurring in part and dissenting in part) ("Despite the defined structural limitations of the Constitution and the clear vesting of executive power in the  President, Congress has increasingly shifted executive power to a *de facto* fourth branch of Government—independent agencies. These agencies wield considerable executive power without Presidential oversight.").

*Bryan and GVI v. WAPA*                                      2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 29 of 62

utilization of adequate water and electric power systems for the people of the Virgin Islands, and

any other service or facilities incidental or appropriate thereto." 30 V.I.C. §§ 103 et seq.

¶ 38    While there are instances where the Legislature has placed WAPA, directly or indirectly,

within the Executive Branch despite the Legislature's emphasis on WAPA's autonomy,[40] this Court

does not find—and Governor Bryan and WAPA do not point to—any evidence supporting their

argument that WAPA definitively falls under the Executive Branch as a purely executive agency.

In fact, further review of the Virgin Islands law governing the Executive Branch and WAPA offers

support for the conclusion that WAPA—even if it falls under the Executive Branch by default—is

clearly and entirely distinguishable from other purely executive agencies.

¶ 39    Most tellingly, of course, is the substantial degree of autonomy expressly given to WAPA

by the Legislature. This is an important distinction from other purely executive agencies.

Furthermore, the Legislature's placement of WAPA's enabling statute under title 30 of the Virgin

Islands Code—which governs public service—and not under title 3 of the Virgin Islands Code—

which governs the Executive Branch—is unquestionably also a marked deviation from the

---

[40] *See e.g.*, 3 V.I.C. § 672 (For the purpose of title 3, chapter 25, subchapter XI, "'agency' means each department, office, agency, or other instrumentality in the executive branch of the Government, excluding (1) the University of the Virgin Islands and (2) the Virgin Islands Water and Power Authority."); 24 V.I.C. § 362 (For the purpose of title 24, chapter 14 of the Virgin Islands Code, which governs public employee labor relations, "public employer" means the executive branch of the Government of the Virgin Islands and any agency or instrumentality thereof including, but not limited to, …the Virgin Islands Water and Power Authority,…"); 31 V.I.C. § 153 (For the purpose of title 31, chapter 20, "'Agency' means any agency, bureau, commission, department or subdivision of the executive branch of the Government, including independent instrumentalities, but specifically excluding the Virgin Islands Water and Power Authority, the Virgin Islands Port Authority, the Economic Development Park Corporation, the University of the Virgin Islands, the Economic Development Bank, and the Virgin Islands Housing Authority;").

By including language to explicitly exclude WAPA as part of the Executive Branch in 3 V.I.C. § 672 and 31 V.I.C. § 153, the Legislature indirectly placed WAPA within the Executive Branch. The exclusion language suggests that the Legislature at times considered WAPA to be part of the Executive Branch because no such language would have otherwise been needed. In contrast, by using the "including, but not limited to" language in 24 V.I.C. § 362, the Legislature directly placed WAPA within the Executive Branch because such language appears to create an illustrative list of Executive Branch's agencies and instrumentalities.

*Bryan and GVI v. WAPA*                    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 30 of 62

treatment of other purely executive agencies. *Compare* 30 V.I.C. § 103 *with* 3 V.I.C. § 1212 (creating a public corporation and autonomous governmental instrumentality—the Virgin Islands Arts and Craft Factory Development Board—and placing its enabling statute under title 3 of the Virgin Islands Code).

¶ 40    Thus, although WAPA may be more appropriately considered to be part of the Executive Branch since there is no fourth branch of government, we would be remiss to simply treat WAPA like other purely executive agencies and ignore the Legislature's clear intent of creating WAPA as "a public corporation and autonomous governmental instrumentality." Instead, in accordance with the legislative intent, WAPA should be regarded to possess a substantial degree of autonomy and independence from the Executive Branch, with the Governor having extremely limited authority over WAPA and the Governing Board. *See In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) ("In analyzing a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — 'wholly superfluous and without an independent meaning or function of its own.'") (quoting *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012)); *see also, V.I. Taxi Ass'n v. W. Indian Co.*, 66 V.I. 473, 484 (2017) ("It is well established that we should, 'if possible, construe statutes harmoniously.'" (quoting *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1143 (4th Cir. 1990) (citation omitted). To put it another way, the Governor does not enjoy the same broad authority over WAPA as he does over purely executive agencies. *See Chiang v. Turnbull*, 43 V.I. 49, 64 (V.I. Terr. Ct. June 20, 2000) ("The Governor's mere studying of WAPA's organizational structure and submitting legislation to alter it, does not ipso facto alter or conflict with WAPA's complete control and supervision over its assets. Such action is only initiatory. It is only when, and if, the Legislature ratifies the Governor's

*Bryan and GVI v. WAPA*                    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 31 of 62

plan that WAPA's control over its property would clearly be affected. This is permissible, however, for the Legislature, which created WAPA, may amend, alter, or modify the law to restructure WAPA at [any time], so long as the new law does not conflict with federal law.") (citing Revised Organic Act (1954) § 8(c)). Given these factors, this Court agrees with the Superior Court's finding that "WAPA resides in the Executive branch, but that the Executive branch is limited in its control over WAPA, unlike pure executive-level agencies."

¶ 41     Having determined that WAPA's relationship with the Executive Branch is appreciably different and distinctively independent from a purely executive agency's relationship with the Executive Branch, this Court now turns to the question of whether Act No. 8472 violated the separation of powers doctrine.

### 3. Whether the Legislature's Enactment of Act No. 8472 Infringed Upon the Power of the Executive Branch

¶ 42     Given that Governor Bryan and WAPA's separation of powers arguments are entirely premised on the incorrect assumption that WAPA is a purely executive agency and failed to take account the Legislature's intent of keeping WAPA autonomous, their arguments must fail. Nevertheless, this Court will address their arguments in turn.

¶ 43     As to the separation of powers issue, Governor Bryan argues that the Legislature usurped the powers reserved for the Governor under the Revised Organic Act by enacting Act No. 8472, which "appointed" the Director of the Virgin Islands Energy Office (hereinafter "Energy Director") as the sole governmental member and "removed" two out of three cabinet-level governmental members, which in turn diminished his general power to supervise and control WAPA. Governor Bryan made the following assertions in support of his argument: (i) Similar to the appointment and removal power of the United States President (hereinafter "President"), the "appoint[ment] and

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 32 of 62

2024 VI 30

remov[al] [of] executive officers and board members rests with the Governor." (Appellants' Br. at 13; 24-28); (ii) "Removing governmental employees from the [Governing] Board who meet the Act's experience and educational requirements simply because they work for the government is 'a capricious and unreasonable act of will' by the Legislature, unconnected to any legitimate goal to justify the overreach [of the executive power]." (*Id.* At 22); (iv) "[T]he [Superior] Court held that the "for cause" removal restriction would not impede the Governor's ability to perform his constitutional duties…[but] the Superior Court's acknowledgment that the Board is part of the Executive Branch is juxtaposed with the incompatible result of its holding that renders the Board answerable to no one." (*Id.* at 28); and (v) "[T]he act permits most of the board to reside on the mainland." (*Id.* at 22).

¶ 44    WAPA agrees with Governor Bryan that the Legislature's enactment of Act No. 8472 infringed upon the Governor's powers under the Revised Organic Act.[41]

¶ 45    The Amicus, however, argues that the Legislature did not usurp the Governor's powers under the Revised Organic Act by enacting Act No. 8472. In support of its argument, the Amicus made the following assertions: (i) "Act No. 8472 does not affect the Governor's appointment or removal powers" or the Governor's general supervision power; (ii) Act No. 8472 is distinguishable from Bill No. 33-0343, which the Superior Court found to "run afoul of the separation of powers [doctrine]" in *Bryan v. V.I. Gov't Hosp. & Health Facilities Corp.*, 2021 V.I. LEXIS 31, at *11 (V.I. Super. Ct. May 20, 2021) (unpublished); and (iii) the Legislature acted "within its legislative power to amend, alter, modify, or repeal any law it previously enacted."

---

[41] Given that Governor Bryan's separation of powers argument encompasses and elaborates on WAPA's argument, this Court will solely address Governor Bryan's argument.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 33 of 62

2024 VI 30

### a. The Legislative Power

¶ 46    This Court agrees with the Superior Court's finding that the Legislature acted within its power under the Revised Organic Act when it enacted Act No. 8472.

¶ 47    Act No. 8472, which modified the Governing Board of WAPA—an autonomous governmental instrumentality that is not a purely executive agency—is "not inconsistent with th[e] [Revised Organic] Act or the laws of the United States made applicable to the Virgin Islands" and it did not "impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States." *See* Revised Organic Act of 1954, §8(a), 48 U.S.C. § 1574(a) ("That the legislature shall have power, when within its jurisdiction and not inconsistent with the other provisions of this Act [48 USCS §§ 1541 et seq.], to amend, alter, modify, or repeal any local law or ordinance, public or private, civil or criminal, continued in force and effect by this Act [48 USCS §§ 1541 et seq.], except as herein otherwise provided, and to enact new laws not inconsistent with any law of the United States applicable to the Virgin Islands, subject to the power of Congress to annul any such Act of the legislature.").

¶ 48    In fact, the Legislature's power to modify the Governing Board—either by changing the total number of Governing Board members, or by altering the governmental members to non-governmental members ratio, or by adopting new protocols/revising existing protocols for the Governing Board members, including but not limited to establishing the term length, residency requirement, compensation rate, appointment process, removal process, reappointment process, and parameters regarding who may serve as governmental members—is evidenced throughout the history of WAPA. *See e.g.*, Act No. 2366 (the Legislature modified the Governing Board by increasing the total number of Governing Board members; changing the number of governmental

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 34 of 62

2024 VI 30

members and non-governmental members; designating the individual appointed by the Governor as the Director of Budget for the Virgin Islands to also serve as a governmental member; mandating the residence of the non-governmental members; and increasing the length of the terms for appointed members);[42] Act No. 4108 (the Legislature modified the Governing Board by, *inter alia*, reducing the total number of Governing Board members; changing the number of governmental members and non-governmental members; mandating that the individual serving as the Governor of the Virgin Islands, the Commissioner of Public Works for the Virgin Islands, the Commissioner of Commerce for the Virgin Islands, and the Director of the Budget to no longer serve as governmental members; mandating the residence of the non-governmental members; increasing the length of the terms for appointed members; establishing the appointment process for governmental members by mandating that the governmental members must be appointed by the Governor from among the heads of cabinet-level executive departments or agencies; establishing the reappointment process for non-governmental members; and increasing compensation rate for non-governmental members);[43] Act No. 4951 (the Legislature modified the Governing Board by establishing the removal process for non-governmental members);[44] Act No. 5636 (the Legislature modified the Governing Board by increasing compensation rate for non-governmental members).[45]

¶ 49    Governor Bryan does not cite—and this Court does not find—any evidence that the Legislature's power to modify the Governing Board has ceased. In fact, by "support[ing] the Act's

---

[42] *See supra*, note 7.

[43] *See supra*, note 9.

[44] *See supra*, note 10.

[45] *See supra*, note 11.

*Bryan and GVI v. WAPA*                                      2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 35 of 62

goal of creating minimal expertise requirements for the nongovernmental members," (Appellant's Br. 20), Governor Bryan implicitly concedes that the Legislature has the power to modify the Governing Board—to wit, Act No. 8472 modified the Governing Board so that it is now comprised of six non-governmental members with expertise in fields that the Legislature deemed essential instead of six non-governmental members without any required expertise.

¶ 50    Thus, we conclude that Act No. 8472 constitutes a valid and constitutional legislative act. As we explain further below, the Legislature's enactment of Act No. 8472 did not infringe upon the Governor's powers under the Revised Organic Act.

### b.  The Governor's Appointment Power

¶ 51    This Court agrees with the Superior Court's finding that the Legislature did not infringe upon the Governor's appointment power by enacting Act No. 8472.

¶ 52    First, Governor Bryan's comparison between the Governor's appointment power under the Revised Organic Act and the President's appointment power under the United States Constitution (hereinafter "Constitution") is unavailing; the argument is comparing apples-to-oranges.[46] The President derives his power of appointment from article II, section 2 of the Constitution, which provides:

> **...he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Minister and Consuls, Judges of the Supreme Court, and all other Officers of the United States,** whose Appointments are not herein

---

[46] Additionally, Governor Bryan's comparisons between WAPA and the various federal agencies referenced in his briefs are also improper comparisons. For example, Governor Bryan cites *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), for support that Act No. 8472 violates the separation of powers doctrine. In *Seila Law*, the United States Supreme Court addressed whether the Congress's arrangement of the independent regulatory agency Consumer Financial Protection Bureau—to be led by a single Director who serves a longer term than the President and cannot be removed by the President except for inefficiency, neglect, or malfeasance—violates the Constitution's separation of powers doctrine. *Id.* However, WAPA—based on its functions and structure—is undoubtedly distinguishable from the Consumer Financial Protection Bureau, and Governor Bryan fails to explain how such apples-to-oranges comparison is relevant here.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 36 of 62

2024 VI 30

otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Court of Law, or in the Heads of Departments.

U.S. CONST. art. II, § 2.

On the other hand, the Governor derives his power of appointment from Sections 11[47] and 16(c)[48] of the Revised Organic Act:

The Governor... shall appoint, and may remove, all officers and employees of the executive branch of the government of the Virgin Islands, except as otherwise provided in this or any other Act of Congress, or under the laws of the Virgin Islands... He shall be responsible for the faithful execution of the laws of the Virgin Islands and the laws of the United States applicable in the Virgin Islands.

Revised Organic Act of 1954, § 11, 48 U.S.C. § 1591.

The heads of the executive departments created by this Act [48 USCS §§ 1541 et seq.] shall be appointed by the Governor, with the advice and consent of the legislature. Each shall hold office during the continuance in office of the Governor by whom he is appointed and until his successor is appointed and qualified, unless sooner removed by the Governor. Each shall have such powers and duties as may be prescribed by the legislature. The chairman and members of any board, authority, or commission established by the laws of the Virgin Islands shall, if the laws of the Virgin Islands hereafter provide, also be appointed

---

[47] WAPA's separation of powers argument is limited to Section 11 of the Revised Organic Act.

[48] In his appellate brief, Governor Bryan raises for the first time that the Governor also derives his appointment power from Section 16(c) of the Revised Organic Act. Arguably, Governor Bryan waived his argument concerning the Governor's appointment power under Section 16(c) because it was not raised before the Superior Court. *See* V.I.R.APP.P. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal; provided, however, that when the interests of justice so require, the Supreme Court may consider and determine any question not so presented."); *see also,* V.I.R.APP.P. 22(m) ("Issues that were (1) not raised or objected to before the Superior Court, (2) raised or objected to but not briefed, or (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights.").

In the underlying matter, Governor Bryan's complaint and his August 27, 2021 motion for temporary restraining order, preliminary injunction, and declaratory judgment and the accompanying brief solely addressed the Governor's appointment power under Section 11 of the Revised Organic Act; there was no mention of the Governor's appointment power under Section 16(c). Notably, in its thorough, in-depth analysis of the issues presented, the Superior Court never mentioned in the March 8, 2023 Order that—in addition to Section 11—Governor Bryan also raised Section 16(c) as a source of the Governor's appointment power over the Governing Board. Even more telling is that Governor Bryan's notice of appeal only mentioned that "[o]n appeal, the Appellants will argue without limitation: "Whether Act No. 8472, which changed the structure of the Governing Board of the Virgin Islands Water and Power Authority, is inorganic and unconstitutional because it violates the separation of powers doctrine under the Revised Organic Act of 1954 § 11, as amended," and made no mention of Section 16(c).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 37 of 62

2024 VI 30

> by the Governor with the advice and consent of the legislature, if such board, authority, or commission has quasi-judicial functions: *Provided,* That no law of the Virgin Islands dealing with the chairmanship, membership, or chairmanship and membership of any such board, authority, or commission, and requiring an appointment or appointments to be made with the advice and consent of the legislature, shall relate to more than one such board, authority, or commission, nor shall it relate to any other legislative matter.

Revised Organic Act of 1954, § 16(c), 48 U.S.C. § 1597(c).

¶ 53    A comparison of the provisions under the Constitution and the Revised Organic Act shows that the Governor does not enjoy the same unrestricted appointment power as the President. More specifically, the Governor's appointment power of Executive Branch employees is limited by "th[e] [Revised Organic Act], or any other Act of Congress, or [] the laws of the Virgin Islands." Revised Organic Act of 1954, § 11, 48 U.S.C. § 1591. Governor Bryan asserts that "the Legislature's limiting power in Section 11 "is not unfettered, vague, and undefined" and points out that "the Legislature's role in the appointment process is specifically defined in Section 16(c) of the ROA, which states that its role is to provide advise and consent to the Governor's nominees." Governor Bryan further asserts that "[t]he more specific delineation of the Legislatures' [sic] advice and consent role in Section 16(c) and its rights and duties in Section 8 must control over the more general role of the Legislative Limiting Phrase in Section 11."[49] This Court disagrees.

---

Nevertheless, this Court has discretion under Rules 4(h) and 22(m) of the Supreme Court Rules of Appellate Procedure "to reach issues waived on appeal 'when the interests of justice so require' and when such issues 'affect [] substantial rights.'" *Rodriguez v. People*, 71 V.I. 577, 633 (V.I. 2019) (citing *Phillip v. People*, 58 V.I. 569, 585-87 & n.19 (V.I. 2013) (reviewing waived argument under Rule 22(m)); *see Brown v. People*, 55 V.I. 496, 503-04 (V.I. 2011) (reviewing waived argument). In this instance, this Court chooses to exercise its discretion—in the interests of justice and because it affects substantial rights—to review Governor Bryan's argument as to his appointment power under Section 16(c), especially since the Legislature addressed it in its brief. *See Simpson v. Golden*, 56 V.I. 272, 281 n.6 (V.I. 2012) ("waiver of waiver" generally occurs where a litigant fails to raise a procedural default that would result in waiver of the opposing party's position, and therefore waives the right to assert the waiver").

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 38 of 62

2024 VI 30

¶ 54    The United States Supreme Court has instructed that "significance and effect shall, if possible, be accorded to every word" when interpreting a statute, so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *Market Co. v. Hoffman*, 101 U.S. 112, 115-16(1879) (internal citations omitted); *see Cooper Indus. v. Aviall Servs.*, 543 U.S. 157, 166 (2004) (noting that "if § 113(f)(1) were read to authorize contribution actions at any time, regardless of the existence of a § 106 or § 107(a) civil action, then Congress need not have included the explicit 'during or following' condition... [and] would render part of the statute entirely superfluous, something we are loath to do") (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Here, if the Legislature's sole restriction on the Governor's appointment power is providing advice and consent under Section 16(c) of the Revised Organic Act, then Congress need not have included the explicit "except as otherwise provided in this or any other Act of Congress, or *under the laws of the Virgin Islands*" in Section 11 of the Revised Organic Act following the phrase "He shall

---

This Court finds Governor Bryan's argument that the Legislature infringed upon the Governor's appointment power under Section 16(c) unpersuasive. Section 16(c) gives the Governor authority to appoint "[t]he heads of the executive departments" and "[t]he chairman and members of any board, authority, or commission...if such board, authority, or commission has quasi-judicial function." Revised Organic Act of 1954, § 16(c), 48 U.S.C. § 1597(c). Governor Bryan fails to explain why or provide any evidence to show that the members of the Governing Board are considered "heads of executive departments" under Section16(c). If the drafters of the Revised Organic Act intended to give the Governor authority to appoint heads and members of any board within the executive departments, then they clearly could have done so by including the language "and members of any board" after "heads" in the first sentence of Section 16(c), but the drafters did not. In fact, the drafters made it clear that the Governor has the authority to appoint members of any board only if such board has quasi-judicial function. As noted above, the Governing Board does not have quasi-judicial function. *See* 30 V.I.C. § 105 ("[WAPA] is created for the purpose of developing and utilizing and aiding in the development and utilization of adequate water and electric power systems for the people of the Virgin Islands, and any other service or facilities incidental or appropriate thereto, including the providing of services for wholesale advanced communications capabilities and services and telecommunications systems, and making the benefits thereof available to the inhabitants of the Virgin Islands in the widest economic manner consistent with sound fiscal management, and by this means to promote the general welfare and increase commerce and prosperity."). Thus, even assuming *arguendo* that WAPA is a purely executive agency—which this Court emphasizes that it is not—the appointment of the Governing Board members does not fall within the province of the Governor's power under Section 16(c).

[49] In his appellate brief, Governor Bryan refers to the phrase "or under the laws of the Virgin Islands" in Section 11 of the Revised Organic Act as the "Legislative Limiting Phrase."

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 39 of 62

2024 VI 30

appoint, and may remove, all officers and employees of the executive branch of the government of the Virgin Islands,"[50] and followed by the sentence "He shall be responsible for the faithful execution of the laws of the Virgin Islands and the laws of the United States applicable in the Virgin Islands." In other words, Governor Bryan's interpretation would render parts of the Revised Organic Act entirely superfluous. It must therefore be avoided. *See, e.g., In re L.O.F.*, 62 V.I. at 661 (observing that when interpreting a law, the courts "must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it – or another provision – 'wholly superfluous and without an independent meaning or function of its own'") (quoting *Defoe*, 56 V.I. at 129). Thus, the Governor's appointment power under Section 11 of the Revised Organic Act should be interpreted to be limited by the laws enacted by the Legislature pursuant to its legislative power under Section 8 of the Revised Organic Act.

¶ 55    Second, even assuming *arguendo* that the Governor has unfettered appointment power under the Revised Organic Act over the Governing Board—which this Court emphasizes that he does not—the Legislature did not appoint any governmental member by enacting Act No. 8472 as argued by Governor Bryan—to wit, the Legislature did not mandate any named individual as the sole governmental member. Instead, the Legislature designated that the individual appointed by the Governor to the position of the Energy Director to also serve as the sole governmental member on the Governing Board. *See* 3 V.I.C. § 8(a) ("There is established in the Office of the Governor the Virgin Islands Energy Office. The Office is headed by a Director appointed by the Governor.

---

[50] The sentence in its entirety reads: "He shall appoint, and may remove, all officers and employees of the executive branch of the government of the Virgin Islands, except as otherwise provided in this or any other Act of Congress, or under the laws of the Virgin Islands, and shall commission all officers that he may be authorized to appoint." Revised Organic Act of 1954, § 11, 48 U.S.C. § 1591.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 40 of 62

2024 VI 30

The Director shall perform such duties as may be assigned by the Governor."). This is akin to the Legislature creating a position which the Governor is then tasked to fill. In fact, from WAPA's inception, the Legislature has previously modified the Governing Board by designating individuals appointed by the Governor to various governmental positions to also serve as the governmental members of the Governing Board. *See e.g.,* Act No. 1248 (designated the Commissioner of Public Works for the Virgin Islands and the Commissioner of Commerce for the Virgin Islands as governmental members of the Governing Board);[51] Act No. 2366 (designated the Director of Budget for the Virgin Islands as a governmental member of the Governing Board).[52] And, under Act No. 8472, the Governor still has the authority to appoint all seven Governing Board members—to wit, the six non-governmental members are appointed by the Governor with the advice and consent of the Legislature and the sole governmental member is appointed by the Governor via the Governor's authority to appoint the Energy Director.

¶ 56    Third, perhaps recognizing that the Legislature's designation of the Energy Director as the sole governmental member on the Governing Board cannot be considered an outright appointment, Governor Bryan also argues that Act No. 8472 "erodes . . . the Governor's [appointment] power under the ROA" by mandating the Energy Director to serve a dual role as both the Energy Director and a Governing Board member because it "limits the Governor's choice of Energy Office Director

[51] The Governor, with the advice and consent of the Legislature, appoints the commissioner of Public Works for the Virgin Islands. *See* 3 V.I.C. § 132(b).

   The Department of Commerce for the Virgin Islands was established in 1961. *See* Act No. 661, § 2 (V.I. Reg. Sess. 1961). Under the Department of Commerce's enabling statute, the Governor, with the advice and consent of the Legislature, appoints the commissioner of the Department of Commerce. *Id.* In 1987, the Department of Commerce was redesignated as the Department of Economic Development and Agriculture. *See* Act No. 5265 (V.I. Reg. Sess. 1987).

[52] The Governor, with the advice and consent of the Legislature, appoints the Director of Budget for the Virgin Islands. *See* 3 V.I.C. § 4(a).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 41 of 62

2024 VI 30

based on a facet of the Energy Office Director's duties." Governor Bryan hypothesized, for example, that "if the Energy Office Director disagrees with one of the Governor's decisions on WAPA, the Governor's only recourse is to dismiss the Energy Director from his cabinet." This argument is unpersuasive. As this Court points out below, the Governor does not have general supervision power over WAPA. Furthermore, the Governing Board—not the Governor—makes decisions for WAPA, so it would be the Governing Board—not the Energy Director—that disagrees with the Governor's opinion or suggestion regarding WAPA.[53]

¶ 57    Lastly, as explained above, WAPA is not a purely executive agency, and instead, WAPA retains its autonomy with the Governor having very limited authority over WAPA and the Governing Board. Thus, the Governor does not have the same appointment power under Section 11 of the Revised Organic Act over the Governing Board as he does with purely executive agencies. Furthermore, as this Court explained earlier, the language of Section 11 of the Revised Organic Act unambiguously reflects the drafters' decision that the Governor's appointment authority—even over purely executive agencies—is subject to limitations under laws the Legislature passes. The Governor's authority must yield to Act No. 8472—a lawfully enacted Act by the Legislature.

---

[53] Again, this is not the first instance where the Legislature designated various individuals to serve a dual role like the Energy Director. *See e.g.*, Act No. 1248 (designated the Commissioner of Public Works for the Virgin Islands and the Commissioner of Commerce for the Virgin Islands as governmental members of the Governing Board); Act No. 2366 (designated the Director of Budget for the Virgin Islands as a governmental member of the Governing Board); Act No. 4108 (designated certain cabinet heads—per the Governor's appointment—as governmental members of the Governing Board). Interestingly, it is raised for the first time since WAPA's inception by Governor Bryan that such a provision "impedes" the Governor's appointment power because it limits the Governor's choice of these heads for the respective office(s); no prior Governor has objected or expressed such a concern over these designations.

*Bryan and GVI v. WAPA*     2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 42 of 62

### c. The Governor's Removal Power

¶ 58    This Court agrees with the Superior Court's finding that the Legislature did not infringe upon the Governor's removal power by enacting Act No. 8472.

¶ 59    First, Governor Bryan's comparison between the Governor's removal power and the President's removal power is unavailing. This is another improper comparison between the removal power of two individuals—the President and the Governor—that cannot be practically compared due to the inherent differences of their respective roles. In fact, Governor Bryan himself fails to develop any legal arguments to demonstrate that such a comparison is proper.

¶ 60    Governor Bryan did not identify the Constitutional provision that confers upon the President his removal power, and instead, cites cases—*Myers v. United States*, 272 U.S. 52 (1926); *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); and *Seila Law v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020)—in which the United States Supreme Court articulated the President's removal power. For example, Governor Bryan quotes the *Myers* opinion,[54] where the United States Supreme Court addressed whether the removal of

---

[54] Governor Bryan's appellate brief provides in relevant parts:

> …But once created and staffed through gubernatorial appointments, the separation of powers doctrine prevents the Legislature from clawing back the Governor's power of appointment. *Myers*, 272 U.S. at 117-18 ("the moment an office and its powers and duties are created, the power of appointment and removal, as limited by the Constitution, vests in the Executive"). In *Myers*, the [United States Supreme] Court also noted:
>
>> It was urged that the natural meaning of the term "executive power" granted the President included the appointment and removal of executive subordinates. If such appointments and removals were not an exercise of the executive power, what were they? They certainly were not the exercise of legislative or judicial power in government as usually understood must be interpreted in favor
>
> *Id.*
>
> Additionally, instead of, at the very least, allowing the Governor to select the sole remaining cabinet officer of his choice to sit on the Board, the Legislature unconstitutionally and inorganically limited the Governor's appointment discretion to the Energy Office Director.
>
> …

*Bryan and GVI v. WAPA*                                    2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 43 of 62

Myers—a postmaster of the first class reappointed by the President by and with the advice and

consent of the Senate—from office before the expiration of his term by an order sanctioned by the

President, without the Senate's approval or advice, was in violation of § 6 of the Act of Congress,

19 Stat. 80 (1876), and held that "the provision of the law of 1876, by which the unrestricted power

of removal of first class postmasters is denied to the President, is in violation of the Constitution,

and invalid." 272 U.S. at 176. However, Governor Bryan provides no explanation of how the

quoted language shows that the Governor's removal power over WAPA is analogous to the

President's removal power of a postmaster of the first class. Governor Bryan likewise provides no

explanation for the language he quotes from *Seila Law* and *Free Enterprise Fund.* This Court

declines to make such an inquiry and give life to arguments that Governor Bryan has failed to

develop on his own. *See Encarnacion v. Testamark*, 2023 V.I. 10, ¶ 13 (V.I. 2023) ("This Court has

repeatedly emphasized that our adversarial system of justice is premised on the parties presenting

facts and legal arguments before a neutral and relatively passive judge, and that it is extraordinarily

disfavored for courts to forsake their roles as arbiters of legal questions presented and argued by

the parties before them and instead sit as self-directed boards of legal inquiry and research.")

(internal quotation marks omitted); *see also, Joseph v. Joseph*, 2015 V.I. LEXIS 43, at *5 (V.I.

---

...So each Governor is charged with implementing energy policy, particularly concerning WAPA. To implement energy policy, the Governor requires subordinates loyal to him. Chief Justice Taft noted the loyalty requirement in *Myers*:

> In all such cases, the discretion to be exercised is that of the President in determining the national public interest and in directing the action to be taken by his executive subordinates to protect it. In this field his cabinet officers must do his will. He must place in each member of his official family, and his chief executive subordinates, implicit faith. The moment that he loses confidence in the intelligence, ability, judgment or loyalty of any one of them he must have the power to remove him without delay.

*Myers*, 47 S. Ct. at 31.

(Appellant Br. 15-18).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 44 of 62

2024 VI 30

Super. Ct. Apr. 23, 2015) ("[I]n general, the Court will not make a movant's arguments for him when he has failed to do so."). By simply quoting the language—with no context whatsoever or any reasoning past the quotes themselves—which allegedly support the argument that the Governor has the same removal power as the President, Governor Bryan has failed to adequately present this argument as required by the Virgin Islands Rules of Appellate Procedure and our precedent. *See* V.I.R.APP.P. 22(m)(3) ("Issues that…are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights."); *see also*, V.I.R.APP.P. 22(a)(5) ("The argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."); *Heath v. People of the V.I.*, 2024 V.I. Supreme LEXIS 16, at *46-47 (V.I. Mar. 27, 2024) (noting that "the appellant's brief is insufficient [in the presentation aspect] because "[a]n argument consisting of a single sentence, lacking citation to any supporting authority whatsoever, and providing no references to facts in the record on appeal that are relied upon for support, clearly does not comply with the obligation imposed by Rule 22(a)(5)" and that "this Court has repeatedly held that such undeveloped arguments need not be considered on appeal"). Based on the record presented, we decline to exercise the option to review Governor Bryan's woefully undeveloped and insufficiently presented argument that the Governor has the same removal power as the President, and instead deem it waived pursuant to Rule 22(m). *See Percival v. People*, 62 V.I. 477, 490 (V.I. 2015) ("Since [appellant's] substantive argument on th[e] issue amounts to a single sentence, unsupported by any

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 45 of 62

2024 VI 30

citation to legal authority supporting th[e] argument, the issue is waived.") (citing former V.I. S.

CT. R. 22(m), the predecessor of current V.I. R. APP. P. 22(m)).

¶ 61    Second, the Governor similarly derives his removal power—like his appointment power—

from Sections 11 and 16(c)[55] of the Revised Organic Act and is thus similarly restricted by "th[e]

[Revised Organic Act], or any other Act of Congress, or [] the laws of the Virgin Islands." Revised

Organic Act of 1954, § 11, 48 U.S.C. § 1591. Thus, for the same reason stated above regarding the

Governor's appointment power under Section 11 of the Revised Organic Act, this Court concludes

that the Governor's removal power under Section 11 of the Revised Organic Act is similarly

limited by the laws enacted by the Legislature pursuant to its power under Section 8 of the Revised

Organic Act.

¶ 62    Third, even assuming *arguendo* that the Governor has unfettered removal power under

Section 11 of the Revised Organic Act over the Governing Board—which this Court emphasizes

that he does not—the Legislature did not remove governmental members by enacting Act No. 8472

as argued by Governor Bryan—to wit, the Legislature did not discharge any named individual

---

[55] In his appellate brief, Governor Bryan raises for the first time that the Governor also derives his removal power from Section 16(c) of the Revised Organic Act. Arguably, Governor Bryan similarly waived his argument concerning the Governor's removal power under Section 16(c) because it was not raised before the Superior Court. *See* V.I.R.APP.P. 4(h); *see also*, V.I.R.APP.P. 22(m). Just like his argument regarding the Governor's appointment power, Governor Bryan did not mention his removal power under Section 16(c) of the Revised Organic Act in his filings in the underlying matter or his notice of appeal in this appeal, and the Superior Court also did not mention in the March 8, 2023 Order that—in addition to Section 11 of the Revised Organic Act—Governor Bryan also raised Section 16(c) as a source of the Governor's removal power over the Governing Board.

Nevertheless, this Court again chooses to exercise its discretion—in the interests of justice and because it affects substantial rights—to review Governor Bryan's argument as to his removal power under Section 16(c), especially since the Legislature addressed it in its brief. *See Rodriguez*, 71 V.I. at 633 (reviewing waived argument under Rule 22(m)); *see also, Brown*, 55 V.I. at 503-04 (reviewing waived argument); *Simpson*, 56 V.I. at 281 n.6 ("waiver of waiver" generally occurs where a litigant fails to raise a procedural default that would result in waiver of the opposing party's position, and therefore waives the right to assert the waiver").

Based on the same analysis and reasoning above regarding the Governor's appointment power under Section 16(c), this Court similarly finds Governor Bryan's argument that the Legislature infringed upon the Governor's removal power under Section 16(c) unpersuasive.

*Bryan and GVI v. WAPA*          2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 46 of 62

from serving as a governmental member. Instead, the Legislature—acting within its power under

Section 8 of the Revised Organic Act—restructured the Governing Board's nine-member-

composition consisting of three governmental members plus six non-governmental members to a

seven-member-composition consisting of one governmental member (to be served by the

individual appointed by the Governor to the position of the Energy Director) plus six non-

governmental members.[56] In fact, under Act No. 8472, the Governor still has the authority to

remove all seven Governing Board members—to wit, the six non-governmental members may be

---

[56] Perhaps recognizing that the Legislature's restructuring of the Governing Board's nine-member-composition to a seven-member-composition is not considered to be an outright removal, Governor Bryan raised for the first time in his reply brief that "[u]nder Section 16(b), it is the Governor's role to change the government's instrumentalities' board members from time to time, subject to the approval of the Legislature (the Legislature's advice and consent role under Section 16(c))." Arguably, Governor Bryan similarly waived his argument concerning his power to reorganize instrumentalities under Section 16(b) of the Revised Organic Act because it was not raised before the Superior Court, *see* V.I.R.APP.P. 4(h); *see* also, V.I.R.APP.P. 22(m), and it was not raised until his reply brief, *see People of the V.I. In the Interest of A.A.P.*, 2024 V.I. Supreme LEXIS 3, at *5 (Jan. 11, 2024) ("[w]hen an argument is raised for the first time on appeal in a reply brief, that argument is deemed waived because the appellee will not get an opportunity to respond to the argument") (quoting *In re Hailey*, 2020 VI 14, ¶ 20 n.7, 73 V.I. 575, 588 n.7 (V.I. 2020) (quoting *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 567 (V.I. 2012))).

Just like his argument regarding Section 16(c) of the Revised Organic Act, Governor Bryan did not mention his reorganization power under Section 16(b) in his filings in the underlying matter or his notice of appeal in this appeal, and the Superior Court also did not mention in the March 8, 2023 Order that—in addition to Section 11 of the Revised Organic Act—Governor Bryan also raised Section 16(b) as a source of the Governor's reorganization power over the Governing Board.

Nevertheless, this Court again chooses to exercise its discretion—in the interests of justice and because it affects substantial rights—to review Governor Bryan's argument as to his reorganization power Section 16(b), especially since the Legislature addressed it in its brief. *See Rodriguez*, 71 V.I. at 633 (reviewing waived argument under Rule 22(m)); *see also, Brown*, 55 V.I. at 503-04 (reviewing waived argument); *Simpson*, 56 V.I. at 281 n.6 ("waiver of waiver" generally occurs where a litigant fails to raise a procedural default that would result in waiver of the opposing party's position, and therefore waives the right to assert the waiver").

This Court finds Governor Bryan's argument that the Legislature infringed upon the Governor's power to reorganize instrumentalities under Section 16(b) unpersuasive. Section 16(b) provides that "[t]he Governor shall, from time to time, after complying with the provisions of subsection (a) of this section, examine the organization of the executive branch of the government of the Virgin Islands, and shall make such changes therein, subject to the approval of the legislature, not inconsistent with this Act [48 USCS §§ 1541 et seq.], as he determines are necessary to promote effective management and to execute faithfully the purposes of this Act [48 USCS §§ 1541 et seq.] and the laws of the Virgin Islands." Revised Organic Act of 1954, § 16(b), 48 U.S.C. § 1597(b). As noted above, Governor Bryan's argument is entirely premised on the incorrect assumption that WAPA is a purely executive agency. As explained above, WAPA is not a purely executive agency, and instead, WAPA retains its autonomy with the Governor having very limited authority over WAPA and the Governing Board. Thus, the reorganization of the Governing Board does not fall within the province of the Governor's power under Section 16(b).

*Bryan and GVI v. WAPA*     2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 47 of 62

removed for cause by the Governor and the sole governmental member may be removed at will by

the Governor via the Governor's authority to remove the Energy Director.

¶ 63     Finally, again, WAPA is not a purely executive agency, and instead, WAPA retains its

autonomy with the Governor having very limited authority over WAPA and the Governing Board.

Thus, the Governor does not have the same removal power under Section 11 of the Revised

Organic over the Governing Board as he does with purely executive agencies. Furthermore, the

language of Section 11 of the Revised Organic Act unambiguously reflects the drafters' decision

that the Governor's removal authority, just like the Governor's appointment power—even over

purely executive agencies—is subject to limitations by laws the Legislature passes. Again, the

Governor's authority must yield to Act No. 8472—a lawfully enacted Act by the Legislature.[57]

---

[57] In his appellate brief, Governor Bryan points out that the Superior Court—in finding that "the 'for cause' removal protection that [Act No. 8472] grants the nongovernmental members of the Board does not violate the separation of powers" since "the 'for cause' removal restriction would not impede the Governor's ability to perform his constitutional duties"—disagreed with another Superior Court judge's finding in *V.I. Gov't Hosp.* that "removing the Governor's ability to remove Hospital Corporate and District Boards members under Act 8438 was unconstitutional." Thus, Governor Bryan concludes that "the Superior Court's disagreement with its sister court in [*V.I. Gov't Hosp.*], and the long-standing principle that the power of removal is incident with the power of appointment, was erroneous. WAPA does not cite *V.I. Gov't Hosp.* for support in its appellee brief.

In its amicus curiae brief, the Amicus distinguishes *V.I. Gov't Hosp.* from this matter by noting what it considers key differences between Act No. 8472 and Act No. 8438—the legislation challenged in *V.I. Gov't Hosp.*—to wit, Act No. 8438 "among other things, amended the district board…by changing the number of members the Governor was allowed to appoint and also eliminating his power to remove any members from the district board" while Act No. 8472 "merely reduced the number of members the Governor could appoint to the Authority's governing board from nine to six and required specific qualifications regarding those six appointed board members." The Amicus thus concludes that, unlike Act No. 8438, "Act No. 8472 does not in any way restrict the Governor's removal power."

This Court notes at the outset that Act No. 4951, a 1984 amendment to Section 103(a), rather than the current Act on appeal, added the "for cause" removal provision for non-governmental members. *See supra*, note 10. Prior to the 1984 amendment, Section 103(a) was silent as to the removal process for non-governmental members. Interestingly, it is raised for the first time in 40 years by Governor Bryan that such a provision "impedes" the Governor's removal power over the Governing Board—assuming *arguendo* that the Governor has such unfettered removal power over WAPA—while no prior Governor has objected or expressed such a concern over this removal process for the non-governmental members.

This Court further notes that "[i]t is well-established that a prior decision of one Superior Court judge in one case "does not constitute controlling authority in any subsequent proceeding." *Parris v. Nurse*, 76 V.I. 492, 498 n.8 (V.I. 2022) (quoting *Edney v. Edney*, 64 V.I. 661, 665 n.2 (V.I. 2016)); *see In the Matter of Q.G.*, 60 V.I. 654, 661 n.8 (V.I. 2014) ("[T]he decision of a single Superior Court judge … is not binding precedent on other Superior Court judges.") (citing *Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 & n.7 (3d Cir. 1991)). Thus, regardless of whether

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 48 of 62

2024 VI 30

### d. The Governor's Supervision Power

¶ 64    This Court likewise agrees with the Superior Court's finding that the Legislature did not infringe upon the Governor's supervision power by enacting Act No. 8472.

¶ 65    Governor Bryan argues that until the Legislature passed Act No. 8472, the Governor always had "significant, if not direct, control of WAPA" because "[i]f the Governor himself was not a member of the [Governing] Board, several of his cabinet members were." This Court disagrees. WAPA's enabling statute specifically stated that "[t]he Authority hereby created is and shall be a governmental instrumentality subject, as provided for herein, to the control of the aforenamed officers of the Government of the Virgin Islands, acting in their capacity as members and Governing Board thereof, but it is a corporation having legal existence and personality separate and apart from the Government and the officers controlling it." Act No. 1248. In other words, the Governor—when serving as a member of the Governing Board—was acting in his capacity as a member and not in his capacity as the Governor, and the Governing Board—not the Governor—controls WAPA. Similarly, each governmental member and non-governmental member—when

---

this case and *V.I. Gov't Hosp.* are distinguishable, the fact that the Superior Court judge in the underlying matter disagreed with another Superior Court judge's decision in *V.I. Gov't Hosp.* does not in and of itself does not render the Superior Court's holding here erroneous. To be clear, this Court renders no opinion as to the holdings in *V.I. Gov't Hosp.* because that matter was never appealed, and the question is not properly before us. Rather, we address in this case only the narrow question that has been appealed: whether the Legislature infringed upon the Governor's power over WAPA by enacting Act No. 8472.

As this Court already stated above, the Governor does not have the same removal power under Section 11 of the Revised Organic Act over the Governing Board as he does with purely executive agencies—and even if he does—it is not unfettered; under Section 11, the Governor's authority must still yield to the laws the Legislature passed—in this case, Act No. 4951—which added the "for cause" removal provision for non-governmental members.

*Bryan and GVI v. WAPA*          2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 49 of 62

serving as a member of the Governing Board—is acting in his/her capacity as a member, not in his/her capacity as a cabinet head or individual capacity.[58]

¶ 66    Governor Bryan also seems to argue that the Legislature, by "permitting majority of the [Governing] Board to be nongovernmental non-residents" under Act No. 8472, infringed upon the Governor's general supervision power because it would "present[] a real danger that the Board will become privatized without local control." However, this Court already pointed out above that the Governor does not have general supervision power over WAPA and the Governing Board. Even assuming *arguendo* that the Governor does, Governor Bryan's argument lacks merit. Act No. 8472 provides that "[n]o more than two of the non-governmental board members, may reside outside of the territory." This means that, at most two out of the six non-governmental members may be non-residents and the other remaining four non-governmental members, along with the sole governmental member, must be residents of the Virgin Islands. Two out of seven Governing Board members do not constitute a majority as argued by Governor Bryan.

¶ 67    In summary, the Legislature's enactment of Act No. 8472 did not infringe upon the Governor's power under the Revised Organic Act. Accordingly, the Superior Court committed no error when it ruled that Act No. 8472 did not violate the separation of powers doctrine.

---

[58] In 1978, the Legislature amended the language of 30 V.I.C. § 103(b) but continued to emphasize WAPA's autonomy from the Government. *See* Act No. 4108 (amended the language from "[t]he Authority hereby created is and shall be a governmental instrumentality subject, as provided for herein, to the control of the aforenamed officers of the

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 50 of 62

2024 VI 30

### D. Whether Act No. 8472 is Arbitrary

¶ 68    Governor Bryan also argues that Act No. 8472 is unconstitutional because it is arbitrary.[59] This argument, however, is undeveloped to the point of frustrating judicial review.

¶ 69    Governor Bryan's arbitrariness argument is confusing because he fails to present a sufficiently developed argument with supporting authority. Based on what this Court could discern, Governor Bryan—by arguing the arbitrariness of Act No. 8472—appears to contend that this Court should apply the rational basis standard of review in deciding the question of whether Act No. 8472 is lawful. This argument is without merit.

¶ 70    First, Governor Bryan fails to explain or provide any legal authority in support of his position that this Court should apply the rational basis review standard to his separation of powers challenge to Act No. 8472. Instead, Governor Bryan simply asserts that "the Superior Court erred by not giving full weight to the arbitrariness of the Act in its [March 8, 2023] Opinion by finding that it did not violate the separation of powers doctrine," that "[t]he Framers specifically sought to have the courts excise arbitrary legislation as part of the checks and balances system," and that "[t]his Court must find the Act is unconstitutional because the Legislature encroached on the power of the executive without any legitimate reason and because the act, as applied, is arbitrary."

---

Government of the Virgin Islands, acting in their capacity as members and Governing Board thereof, but it is a corporation having legal existence and personality separate and apart from the Government and the officers controlling it" to "[t]he Authority hereby created is and shall be an autonomous governmental instrumentality subject, as provided for herein, to the control of the Governing Board thereof, but it is a corporation having legal existence and personality separate and apart from the Government".)

[59] WAPA does not argue that Act No. 8473 is arbitrary.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 51 of 62

2024 VI 30

¶ 71    Second, Governor Bryan raises an equal protection argument for the first time on appeal and essentially argues that Act No. 8472 will fail the rational basis test. This argument is problematic on several levels: (i) Governor Bryan's equal protection argument was not raised before the Superior Court—to wit, Governor Bryan did not mention his equal protection argument in his filings in the underlying matter or his notice of appeal in this appeal, and the Superior Court, despite its thorough, in-depth analysis of all the issues presented, did not mention in the March 8, 2023 Order that Governor Bryan also raised an equal protection argument; (ii) Governor Bryan fails to properly develop this constitutional challenge. Instead, Governor Bryan simply asserts that "[r]emoving governmental employees from the Board who meet the Act's experience and educational requirements simply because they work for the government is "a capricious and unreasonable act of will" by the Legislature, unconnected to any legitimate goal to justify the overreach," and "the Fourteenth Amendment and the Revised Organic Act prevent the deprivation of equal protection under the law, which requires the court to conduct qualitative analyses of statutes."

¶ 72    Governor Bryan has failed to adequately present this "rational basis standard" arbitrariness argument as required by the Virgin Islands Rules of Appellate Procedure and our precedent. *See* V.I.R.APP.P. 22(m)(3) ("Issues that…are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights."); *see also*, V.I.R.APP.P. 22(a)(5) ("The argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."); *Heath*, 2024 V.I. Supreme LEXIS 16, at *46-47 (V.I.

*Bryan and GVI v. WAPA*     2024 VI 30
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 52 of 62

Mar. 27, 2024) (noting that "the appellant's brief is insufficient [in the presentation aspect] because "[a]n argument consisting of a single sentence, lacking citation to any supporting authority whatsoever, and providing no references to facts in the record on appeal that are relied upon for support, clearly does not comply with the obligation imposed by Rule 22(a)(5)" and that "this Court has repeatedly held that such undeveloped arguments need not be considered on appeal"). Based on the record presented, we decline to exercise the option to review Governor Bryan's hastily and belatedly raised, undeveloped "rational basis standard" arbitrary argument, and instead deem it waived pursuant to Rule 22(m). *See Percival*, 62 V.I. at 490 ("Since [appellant's] substantive argument on th[e] issue amounts to a single sentence, unsupported by any citation to legal authority supporting th[e] argument, the issue is waived.") (citing former V.I. S. CT. R. 22(m), the predecessor of current V.I. R. APP. P. 22(m)).

¶ 73    Alternatively, if Governor Bryan intends to argue—by his arbitrariness argument—that the Legislature acted "randomly"[60] when it introduced and subsequently passed Act No. 8472, this Court similarly finds it without merit.

¶ 74    In essence, Governor Bryan appears to be arguing that there was no reason (or, perhaps insufficient reason, in his view) for the Legislature to prescribe changes to how the Governing Board had been constituted by, *inter alia*, eliminating two out of three cabinet-level governmental members, because the Governing Board, as constituted prior to the consideration and passage of Act No. 8472, was comprised of governmental members "who me[t] the Act's experience and

---

[60] In his appellate brief, Governor Bryan provides:

> The word "arbitrary" is defined as "existing or coming about seemingly at random or by chance or as a capricious and unreasonable act of will." https://www.merriamwebster.com/dictionary/arbitrary, last accessed June 20, 2023.

(Appellant Br. 21).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 53 of 62

2024 VI 30

educational requirements" and the Legislature had no proof before it that they were somehow inadequately performing their role in assuring that WAPA achieves its statutory mandate, as expressed in V.I. CODE ANN. tit. 30 §§ 103, 105.[61] More specifically, Governor Bryan's argument amounts to a complaint that the Legislature acted arbitrarily in passing Act No. 8472 because the governmental members previously appointed by the Governor to serve on the Governing Board— Anthony Thomas, Commissioner of the Virgin Islands Department of Property and Procurement. and Joel Lee, Director of Virgin Islands Bureau of Internal Revenue—"were qualified to serve on the [Governing] Board" and "[t]he only reason they are excluded from the [Governing] Board by the Act is that they are government employees but not the Director of the Energy Office." In other words, Governor Bryan argues that the Legislature acted arbitrarily in passing Act No. 8472 because the Governing Board was not then "broken" and in need of "fixing."

¶ 75 However, guided by the pronouncement of the Supreme Court of the United States, we have recognized – as other courts have – that the Legislature's "principal function . . . is . . . to

---

[61] Governor Bryan's appellate brief provides in relevant parts:

> It strains credulity that cabinet members with more of the skills required by the Act, specific to the Virgin Islands and federal law and regulations, than any civilian members probably could, would be qualified to serve in their cabinet posts but not qualified to serve on the WAPA Board. That aspect of the Act is arbitrary. The Constitution, however, abhors arbitrary legislation.
>
> . . .
>
> According to the plain meaning of the Act, both Anthony Thomas and Joel Lee were qualified to serve on the Board. The only reason they are excluded from the Board by the Act is that they are government employees but not the Director of the Energy Office. (JA73-JA76; JA94-JA97). Ironically, the Legislature previously vetted Messrs. Thomas and Lee's background and educational accomplishments when the Governor nominated them to their cabinet positions. Livestream at 0:56; (JA117-JA121).
>
> . . . Removing governmental employees from the Board who meet the Act's experience and educational requirements simply because they work for the government is "a capricious and unreasonable act of will" by the Legislature, unconnected to any legitimate goal to justify the overreach. Scott, 688 F. Supp. at 1490.

(Appellant Br. 7, 21-22).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 54 of 62

2024 VI 30

make laws which declare the policy of the state and are subject to repeal" or amendment "when a subsequent Legislature shall determine to alter that policy." *Save Coral Bay*, 76 V.I. at 511 (quoting *Indiana ex rel. Anderson*, 303 U.S. at 100). And it is neither the office of the Judicial Branch, nor that of the Executive Branch, to prescribe public policy changes, nor question the motives underlying such changes, as expressed by the Legislature so long as the Legislature acts within its "exceptionally broad discretion in determining how it will exercise its power and authority to make the law." *Save Coral Bay*, 76 V.I. at 511 (citing *Mapp v. Lawaetz*, 882 F.2d 49, 54 (3d Cir. 1989)). Indeed, as we have emphasized, "[i]t may very well be the case that" a legislative enactment, amendment, or repeal "represents bad policy, and that the[re might be a] better approach" than that espoused by the Legislature; yet "[t]hat, however, is a matter for the Legislature, and not th[e c]ourt[s], for 'it is not the function of [a c]ourt to substitute its judgment for that of the Legislature' on such policy matters." *Atlantic Human Resource Advisors, LLC v. Espersen*, 76 V.I. 583, 611 (V.I. 2022) (quoting *In re Estate of George*, 59 V.I. 913, 924 (V.I. 2013) and *Brady v. Gov't of the V.I.*, 57 V.I. 433, 443 (V.I. 2012)).

¶ 76 So, it was decidedly within the province of the Legislature to determine whether the Governing Board needed "fixing" of some kind and, having determined that some "fixing" was warranted, as long as the "remedy" the Legislature prescribed does not run afoul of the restrictions that the Revised Organic Act places on the Legislature when making or amending the laws of the Virgin Islands, the Judicial Branch cannot negate it. And, having had his gubernatorial veto of Act No. 8472 overridden, neither can the Executive Branch. Rather, as co-ordinate branches of our tripartite system, the Judicial and Executive Branches in this circumstance are "require[d] to [simply] take statutes as [they] find them." *Atlantic Human Res. Advisers*, 76 V.I. at 611. Whatever

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 55 of 62

2024 VI 30

recourse may be had regarding the Legislature's public policy determination must therefore lie with the Legislature, which may be convinced to change course through advocacy and other permissible means. As explained above, the Legislature has the power to modify the Governing Board as it deems fit—including but not limited to restructuring the composition of its members and establishing a minimum education requirement for the members—and Act No. 8472 does not violate the separation of powers doctrine or run afoul of the restrictions that the Revised Organic Act places on the Legislature.

¶ 77    Furthermore, a review of the legislative history reveals that the Legislature introduced Bill No. 34-0022 (later enacted as Act No. 8472) the same day it introduced Bill No. 24-0021 (later enacted as Act No. 8471), which sought to establish the Public Services Commission as a semiautonomous agency,[62] and Bill No. 23-0023 (later enacted as Act No. 8452), which sought to modify the composition of the Public Services Commission by changing the total number of members and adopting new protocols such as establishing the residency requirement, attendance policy, per diem rate, minimum education requirement, various prohibited acts for its members.[63]

---

[62] The preamble for Bill No. 34-0021 provides in relevant part:

> An Act amending the Virgin Islands Code title 3, section 273(a) relating to the Public Services Commission to establish the Commission as a semiautonomous agency;...

> Bill No. 34-0021 (V.I. Reg. Sess. 2021) (proposed Mar. 15, 2021).

[63] The preamble of Bill No. 34-0025 provides:

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 56 of 62

2024 VI 30

The introduction of the precursor bills to Act No. 8472 and Act No. 8452 on the same day—with both aimed to modify the governing body of a governmental agency by restructuring the composition and establishing various protocols for its members—exemplifies to this Court that introducing Bill No. 34-0022 and enacting it as Act No. 8472 were not arbitrary or capricious legislative acts as Governor Bryan claims, but involved a deliberate exercise of judgment by the Legislature.

¶ 78    This conclusion is further supported by the fact that the Legislature—in the month before introducing the aforementioned precursor bills—introduced Bill No. 34-0005 (later enacted as Act No. 8445), which sought "to clarify the limitation on the number of governmental boards and commissions on which commissioners and directors of the Virgin Islands Government may serve while serving on the board or commission of any autonomous or semi-autonomous agency;..." Bill No. 34-0005 (V.I. Reg. Sess. 2021) (proposed February 19, 2021). More specifically, Bill No. 34-0005 sought to amend title 3, section 65a, subsection (d) of the Virgin Islands Code by, *inter alia*, inserting "simultaneously, nor shall the commissioner or director serve on more than two of any other governmental or quasi-governmental boards or commissions during the period of time

---

An Act amending title 3 Virgin Islands Code, chapter 16, section 273 relating to the Public Services Commission to reduce the membership of the Commission from nine to seven members, to provide for a maximum of two Commission members to reside outside of the territory, to provide for virtual attendance of Commission meetings, to increase the per diem for appoint Commission members from $50 to $175, to establish minimum criteria for Public Services Commission members, to prohibit Commission members from having a financial interest in a utility, to prohibit a family member of a person serving in an executive capacity at a public utility subject to regulation by the Commission from being appointed to the Commission; to prohibit person serving in an executive capacity at a public utility from serving as a member of the Commission for at least two years after leaving employment with the public utility, to prohibit Commission members from entering into an employment relationship or other agreement with either an entity regulated by the Commission or a subcontractor of the entity for one year after completion of service to the Commission, to prohibit voting members from holding other public offices and to prohibit Commission members from raising campaign funds and actively campaigning for political candidate's other than a member's family.

Bill No. 34-0025 (V.I. Reg. Sess. 2021) (proposed Mar. 15, 2021).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 57 of 62

2024 VI 30

that the commissioner or director is serving on the board or commission of any autonomous or semi-autonomous agency."[64] Id. This shows that—prior to introducing the precursor bill to Act No. 8472—the Legislature was already contemplating the role and responsibility of these Executive Branch commissioners and directors serving on the board or commission of an autonomous or semi-autonomous agency and decided to place a limitation on the number of governmental boards and commissions they may serve on simultaneously therewith. Thus, the Legislature's subsequent introduction of the precursor bill to Act No. 8472 a month later to reduce the number of Executive Branch commissioners and directors serving on the Governing Board of WAPA, an autonomous agency, is not so far-fetched as to be arbitrary.

---

[64] Bill No. 34-0005 provided:

> Section 2. Title 3, chapter 5, subchapter 1, section 65a of the Virgin Islands Code is amended as follows:
>
> . . .
>
> (b) Subsection (d) is amended by inserting "to the contrary' after '"law" ,and at the end 4 of the subsection by striking "of the United States Virgin Islands" and inserting "simultaneously, 5 nor shall the commissioner or director serve on more than two of any other governmental or 6 quasi-governmental boards or commissions during the period of time that the commissioner or 7 director is serving on the board or commission of any autonomous or semi-autonomous agency."

Bill No. 34-0005 (V.I. Reg. Sess. 2021) (enacted as Act No. 8445).

Prior to the amendment, Section 65a(d) provided:

> Notwithstanding any other law to the contrary, no Commissioner or Director of any department, agency or office of the Executive Branch of the Government of the Virgin Islands shall be appointed to or serve as a member of more than two boards or commissions of any autonomous or semi-autonomous agency of the Government of the Virgin Islands.

3 V.I.C. § 65a(d) (Former).

After such an amendment, the current version of Section 65a(d) provides:

> Notwithstanding any other law to the contrary, no Commissioner or Director of any department, agency or office of the Executive Branch of the Government of the Virgin Islands shall be appointed to or serve as a member of more than two boards or commissions of any autonomous or semi-autonomous agency of the Government **simultaneously, nor shall the commissioner or director serve on more than two of any other governmental or quasi-governmental boards or commissions during the period of time that the commissioner or director is serving on the board or commission of any autonomous or semi-autonomous agency.**

3 V.I.C. § 65a(d) (emphasis added).

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 58 of 62

2024 VI 30

### E. Whether the Superior Court Abused its Discretion by Denying Governor Bryan's Request for Permanent Injunction and Declaratory Relief and Lifting the Preliminary Injunction Order

¶ 79    Governor Bryan argues that "[d]espite ostensibly finding that [he] satisfied all four factors for an injunction at the Hearing, the Superior Court abused its discretion, reversed course, lifted the temporary restraining order, and denied [his] motion for permanent injunction and declaratory relief." WAPA agrees with Governor Bryan that the Superior Court abused its discretion.

¶ 80    The Amicus argues that this Court should affirm the Superior Court's March 8, 2023 Order because enacting Act No. 8472 "is a valid exercise of its inherent legislative power and does not run afoul of the separation of powers doctrine."

#### a. Injunction

¶ 81    When determining whether to grant a motion for preliminary and permanent injunction, the Superior Court must consider the following factors: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary injunction relief will result in even greater harm to the nonmoving party; and, (4) whether granting the preliminary relief will be in the public interest." *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584, 596-97 (V.I. 2018) (quoting *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 550 (V.I. 2015).

¶ 82    "An extraordinary and drastic remedy," a preliminary injunction is "never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013). Permanent injunction, unlike a preliminary injunction, which requires only a showing of probability of success on the merits, requires "the moving party must demonstrate actual success on the merits of the claim." *Sam's Food Distribs., Inc. v. NNA&O, LLC*,

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 59 of 62

2024 VI 30

73 V.I. 453, 463 (V.I. 2020); *see Moses v. Fawkes*, 66 V.I. 454, 461-62 (V.I. 2017) ("Importantly, unlike a preliminary injunction where a strong showing on the remaining three factors can overcome a low likelihood of success on the merits, a permanent injunction can never be entered without actual success on the merits."). "[T]he party seeking an injunction [bears] the burden of proof as to all four factors." *Id.* (quoting *Appleyard v. Gov. Juan F. Luis Hosp. & Med. Ctr.*, 61 V.I. 578, 591 (V.I. 2014)).

¶ 83      Here, as noted above, Governor Bryan and WAPA stipulated to the entry of a preliminary injunction order enjoining WAPA from the enforcement and implementation of Act No. 8472, and Governor Bryan sought to convert it into a permanent injunction, a form of relief he requested in his complaint. In the March 8, 2023 Order, the Superior Court found that Governor Bryan "ha[s] not met any of the factors requiring injunctive relief" and denied his request. Given this Court's conclusions above, Governor Bryan cannot demonstrate actual success on the merits of his claim that Act No. 8472 is unconstitutional. Governor Bryan's failure to satisfy this factor alone demonstrates that he cannot meet his burden for the permanent injunction. *See Sam's Food Distribs., Inc.*, 73 V.I. at 463; *see also, Moses*, 66 V.I. at 461-62. Thus, the Superior Court was correct to find that Governor Bryan is not entitled to a permanent injunction because he cannot succeed on the merits and was correct to deny Governor Bryan's request for permanent injunction. The Superior Court did not abuse its discretion.[65] *See Streibich*, 74 V.I. at 499 ("An abuse of

---

[65] In their respective arguments that the Superior Court abused its discretion, Governor Bryan and WAPA both pointed out that Act No. 8472 raised confusion over the quorum requirement—to wit, Act No. 8472 reduced the number of Governing Board members without explicitly reducing the quorum requirement. Governor Bryan stated that "the [Superior] Court acknowledged the quorum issue at the Hearing, in its [March 8, 2023] Opinion, the [Superior] Court resorted to the intent of the Legislature to amend a separate law, Section 104(b), because the Legislature stated its intent in the preamble and the certificate of enactment—but not the body—of the Act" and asserted that "[t]he [Superior] Court's holding flouts the first tenet of statutory construction to not stray from the text of unambiguous statutes and was erroneous."

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 60 of 62

2024 VI 30

discretion arises only when the decision rests upon a clearly erroneous finding a fact, an errant

conclusion of law or an improper application of law to fact.").

¶ 84    The "clear purpose of that preliminary injunction was to maintain the status quo until the

Superior Court was able to consider his claims on the merits." *Yusuf v. Hamed*, 62 V.I. 565, 569

n.3 (V.I. 2015); *see Gourmet Gallery Crown Bay,* 68 V.I. at 601 (noting that "the main purpose of

a preliminary injunction is to maintain the status quo, defined as the last, peaceable, non-contested

status of the parties") (internal quotation marks omitted). Here, the Superior Court—after a full

adjudication and correctly finding that Governor Bryan is not entitled to a permanent injunction

because he cannot succeed on the merits—was correct to lift the preliminary injunction. Thus, the

Superior Court did not abuse its discretion. *See Streibich*, 74 V.I. at 499.

### b.    Declaratory Judgment

¶ 85    Pursuant to the Virgin Islands Declaratory Judgment Act, 5 V.IC. §§ 1261 et seq., "[c]ourts

of record within their respective jurisdictions shall have power to declare rights, status, and other

legal relations whether or not further relief is or could be claimed," 5 V.I.C. § 1261, and "[a]ny

person…whose rights, status or other legal relations are affected by a statute…may have

---

In its March 8, 2023 memorandum opinion, the Superior Court explained:

> By a plain reading of the Act it is apparent that the quorum requirement was reduced to reflect the number of members on the Board, effectively changing the quorum from five (5) to four (4). Although the language is not expressly stated in the body of the Act, it is evident that the Legislature s intent by so stating in both the preamble and the certificate of enactment, was to amend Section 104(b) to reduce the number of members constituting a quorum from five to four. Prior to Act No 8472 the quorum requirement was five out of nine, creating a simple majority It follows, then, that in reducing the number of members on the Board, the Legislature would reduce the quorum requirement to four which would result in a simple majority on a seven member Board. The argument that the quorum requirement remained the same despite it being listed twice in the Act, is flawed and highly unlikely.

*Bryan v. V.I. Water & Power Auth.*, 77 V.I. 196, 210-11 (V.I. Super. Ct. Mar. 8, 2023).

The Superior Court's interpretation of Section 104(b) has no bearing on this Court's analysis of whether the Superior Court abused its discretion here. Thus, this Court does not reach the issue of whether the Superior Court erred in its interpretation of Act No. 8472 regarding the quorum requirement.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 61 of 62

2024 VI 30

determined any question of construction or validity arising under the... statute... and obtain a declaration of rights, status or other legal relations thereunder," 5 V.I.C. § 1262.

¶ 86    Here, Governor Bryan requested the Superior Court to declare that Act No. 8472 is unconstitutional.[66] The Superior Court chose to exercise its jurisdiction over Governor Byran's request for declaratory relief and denied his request upon determining that "Act No. 8472 does not violate the separation of powers doctrine and is a valid exercise of legislative authority." Given this Court's conclusions above, the Superior Court was correct in its determination and was thus correct to deny Governor Bryan's request for declaratory judgment.

## III. CONCLUSION

¶ 87    For the aforementioned reasons, this Court concludes that the Superior Court did not err when it found that Act No. 8472 did not violate the separation of powers doctrine, that the Superior Court did not err when it denied Governor Bryan's request for declaratory judgment, and that the Superior Court did not abuse its discretion by denying Governor Bryan's request for a permanent injunction and lifting the preliminary injunction order. Accordingly, this Court affirms the Superior Court's March 8, 2023 memorandum opinion and order.

---

[66] More specifically, Governor Bryan requested the Superior Court to "[d]eclare that Act No. 8472 violates the Revised Organic Act of 1954 and the Separation of Powers doctrine of the Constitution of the United States implicit therein...," to "[d]eclare that a Governor holds the sole executive authority pursuant to Section 11 of the Revised Organic Act to appoint and remove members to agencies, instrumentalities, boards, and commissions of the Virgin Islands including, without limitation, the WAPA Board...," to "[d]eclare that Act No. 8472 is ultra vires legislative authority, unconstitutional, inorganic and therefore void ab initio as it violates Section 11 of the Revised Organic Act...," and to "[d]eclare that 30 V.I.C. § 103(a), to the extent, it limits a Governor's power of removal of non-governmental members of the Board is inorganic and void ab initio..." *See supra*, notes 16, 25.

*Bryan and GVI v. WAPA*
S. Ct. Civ. No. 2023-0014
Opinion of the Court
Page 62 of 62

2024 VI 30

Dated this 29th day of October, 2024.

BY THE COURT:

MARIA M. CABRET
Associate Justice

ATTEST:

VERONICA J. HANDY, ESQ.
Clerk of the Court
By:
 Deputy Clerk
Dated: 10-29-2024